No. 19-17397

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

DAVID ISABEL, individually
and on behalf of all others similarly situated,

*Plaintiff-Appellant,*

*vs.*

MICHELE REAGAN, in her individual capacity; et al.,

*Defendants-Appellees.*

**PLAINTIFF-APPELLANT'S OPENING BRIEF**

Appeal from the United States District Court
District of Arizona
CV18-03217-PHX-DWL

Spencer G. Scharff
SCHARFF PLLC
502 W. Roosevelt Street
Phoenix, Arizona 85003
(602) 739-4417
spencer@scharffplc.com

Nathan Fidel
MILLER, PITT, FELDMAN & MCANALLY, P.C.
2800 N. Central Avenue, Suite 840
Phoenix, Arizona 85004
(602) 266-5557
nfidel@mpfmlaw.com

Scott Caplan
THE LAW OFFICE OF SCOTT CAPLAN, P.C.
34-18 Northern Blvd., Ste. B28
Long Island City, NY 11101

*Counsel for Plaintiff-Appellant David Isabel*

# TABLE OF CONTENTS

Introduction .................................................................................................1

Statement of Jurisdiction ..............................................................................2

Statement of the Issues .................................................................................2

Statement of the Case and Facts ...................................................................2

I.   Background ............................................................................................2

II.  Procedural History .................................................................................6

Standard of Review .......................................................................................7

Summary of Argument ..................................................................................8

Argument ......................................................................................................9

I.   The District Court Erred in Dismissing Plaintiff's Constitutional Section 1983 Claim ...........................................................................................................9

    A.   The Amended Complaint Sufficiently Alleged a Constitutional Claim for Relief Under 42 U.S.C. § 1983. ................................................9

        1.   Mr. Isabel Timely Registered to Vote in Arizona's November 2016 General Election. ................................................9

        2.   As a Qualified Voter, the Constitution Guaranteed Mr. Isabel's Right to Have His Vote Counted. ...................................11

    B.   Nothing Precludes Mr. Isabel From Maintaining an Action for Damages Against Defendants Under Section 1983. ................................13

        1.   The District Court Erred in Equating Plaintiff's Voting-Rights Claims with Sore-Loser Claims. ......................................13

        2.   Contrary to the District Court's Holding, Elections Officials Can and Should Be Liable for Monetary Damages ..........................................................................................17

C.   The District Court Mischaracterized the Holding and
     Misunderstood the Relevance of the *ADP* Opinion. ...............................19

D.   The District Court Improperly Imposed a Heightened State-of-
     Mind Pleading Requirement. ...................................................................22

II. Violations of the NVRA are Subject to a Section 1983 Claim for Monetary
    Damages. ..................................................................................................25

A.   Section 11(d) of the NVRA Reflects Congressional Intent to
     Authorize Section 1983 Actions for Damages. .........................................25

B.   The NVRA Does Not Preclude Plaintiff's Constitutional § 1983
     Claims. ...................................................................................................30

Request for Attorneys' Fees .....................................................................................32

Conclusion .............................................................................................................32

Statement Regarding Related Cases .........................................................................34

Certificate of Service ..............................................................................................35

# TABLE OF AUTHORITIES

## CASES

*Albright v. Oliver*, 510 U.S. 266 (1994) ................................................................9

*Anderson v. Warner*, 451 F.3d 1063 (9th Cir. 2006) ................................................9

*Ariz. Democratic Party v. Reagan*, No. CV-16-03618, 2016 WL 6523427
    (D. Ariz. Nov. 3, 2016) ................................................................ *passim*

*Barren v. Harrington*, 152 F.3d 1193 (9th Cir. 1998) ............................................22

*Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397 (1997) .............................................22

*Bragdon v. Abbott*, 524 U.S. 624 (1998) ...............................................................27

*Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979) .................................................28

*City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113 (2005) ...............................26

*Crawford-El v. Britton*, 523 U.S. 574 (1998) ........................................................23

*Daniels v. Williams*, 474 U.S. 327 (1986) .............................................................22

*Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2009) ...................................31

*Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) ......................23

*Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) ....................................................32

*Herman & MacLean v. Huddleston*, 459 U.S. 375 (1983) ......................................27

*Hutchinson v. Miller*, 797 F.2d 1279 (4th Cir. 1986) .............................................15

*Lacey v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012) ......................................22

*Lawrence v. Reed*, 406 F.3d 1224 (10th Cir. 2005) ................................................21

*Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299 (1986) ...................................1

*Middlesex Cnty. Sewerage Auth. v. Natl Sea Clammers Ass'n*, 453 U.S. 1
    (1981) ................................................................................ 26, 29

*Miranda B. v. Kitzhaber*, 328 F.3d 1181 (9th Cir. 2003) ........................................28

*Montz v. Pilgrim Films & Television, Inc.*, 649 F.3d 975 (9th Cir. 2011) ..............31

*Nixon v. Herndon*, 273 U.S. 536 (1927) ........................................18

*Noble v. McClatchy Newspapers*, 433 U.S. 904 (1977) ........................................25

*Noble v. McClatchy Newspapers*, 533 F.2d 1081 (9th Cir. 1975)........................25

*Powell v. Power*, 320 F. Supp. 618 (S.D.N.Y. 1970) ........................................15

*Powell v. Power*, 436 F.2d 84 (2d Cir. 1970) ........................................14

*Puri v. Khalsa*, 844 F.3d 1152 (9th Cir. 2017) ........................................8

*Reynolds v. Sims*, 377 U.S. 533 (1964)........................................12

*Smith v. Robinson*, 468 U.S. 992 (1984)........................................26

*Stilwell v. City of Williams*, 831 F.3d 1234 (9th Cir. 2016) ..................30

*Swafford v. Templeton*, 185 U.S. 487 (1902)........................................19

*Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002)........................................24

*Taylor v. Howe*, 225 F.3d 993 (8th Cir. 2000)........................................18

*United States v. Classic*, 313 U.S. 299 (1941)........................................13

*United States v. Robeles-Ortega*, 348 F.3d 679 (7th Cir. 2003)........................21

*United States v. Wells*, 519 U.S. 482 (1997)........................................30

*Wayne v. Venable*, 260 F. 64 (8th Cir. 1919)........................................18

*Wiley v. Sinkler*, 179 U.S. 58 (1990) ........................................18

## STATUTES

15 U.S.C. § 77p(a) ........................................24

28 U.S.C. §§ 1331........................................1

42 U.S.C. § 1983........................................2, 8

42 U.S.C. § 1988.................................................................28

52 U.S.C. § 20510(b) ........................................................22

A.R.S. § 1-303...............................................................4, 9

A.R.S. § 16-120................................................................4

A.R.S. § 16-134................................................................4

## OTHER AUTHORITIES

Ariz. Att. Gen. Op. No. 58-74..............................................10

Note, *The Background of Section 1983*, 90 HARV. L. REV. 1137 (1977)...............17

Samuel Issacharoff, *Voting Rights at 50*, 67 ALA. L. REV. 387 (2015)..................18

The Honorable Marsha S. Berzon, *Securing Fragile Foundations: Affirmative Constitutional Adjudication in Federal Courts*, 84 N.Y.U. L. REV. 681 (2009) ..............................................18

Tom Stoppard, *Jumpers* (New York: Grove Press, 1972)......................................11

**INTRODUCTION**

Plaintiff-Appellant David Isabel moved from New York to Arizona on October 5, 2016, a Thursday, to serve as a police officer with the City of Phoenix Police Department. The Arizona Secretary of State had, in what was subsequently held to be a violation of both state and federal law, purported to set the voter registration deadline on October 10, 2016, which was Columbus Day, a Monday holiday. On Tuesday, October 11, 2016, Mr. Isabel registered to vote. The core issues in this case are whether that registration was timely and—if so—whether Mr. Isabel, who was later deprived of his constitutional right to vote in the November 2016 general election, may sue for damages.

Though rarely invoked, a "long line of cases, going back to Lord Holt's [1703] decision in *Ashby v. White*, authorizes substantial money damages as compensation for persons deprived of their right to vote in particular elections." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 312 (1986) (internal citation omitted). Notwithstanding this precedent, and assuming without deciding that Mr. Isabel's registration was timely, the District Court dismissed Mr. Isabel's claims at the pleading stage on grounds not raised by Defendants. This Court should reverse.

## STATEMENT OF JURISDICTION

The United States District Court for the District of Arizona had subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 over Plaintiff's claims under the U.S. Constitution, as well as under 42 U.S.C. § 1983.  On November 1, 2019, the District Court issued a Judgment of Dismissal.  Mr. Isabel timely filed a notice of appeal on November 26, 2019.  [Doc. 82; ER001–2.]  This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.     Whether Mr. Isabel's registration was timely.

2.     Whether a state actor's refusal to count a valid ballot cast in an election for federal office constitutes a violation of a constitutional right and redressable by monetary damages under 42 U.S.C. § 1983.

3.     Whether the National Voter Registration Act of 1993 ("NVRA") precludes Mr. Isabel's claims for monetary damages under 42 U.S.C. § 1983.

## STATEMENT OF THE CASE AND FACTS

### I.      BACKGROUND

In 2016, Defendant Michele Reagan (the "Secretary") purported to set the Arizona voter registration deadline as October 10, 2016, which was also Columbus Day, a Monday holiday.  [Doc. 60 (First Amended Complaint) ¶ 19.]  The same issue arose in 2012 and the voter registration deadline was set as the day after

Columbus Day, in light of Columbus Day's status as both a state and federal holiday. [*Id*. ¶ 14–18.] Despite this precedent from 2012, the Secretary announced that October 10th was the correct deadline and that it "could not lawfully be moved to October 11th." [*Id*. ¶ 20.]

On October 19, 2016, the Arizona Democratic Party and the Democratic National Committee (the "Committees") filed suit in the District of Arizona seeking declaratory and injunctive relief. The suit requested the court declare voters who registered on October 11, 2016 (the "October 11th Registrants") eligible to vote in the November 8, 2016 election. *Ariz. Democratic Party v. Reagan*, No. CV-16-03618, 2016 WL 6523427, at *5–6 (D. Ariz. Nov. 3, 2016) (the "*ADP* Opinion"). It also sought an order requiring the Secretary to undertake certain measures to ensure such voters would be able to vote a regular ballot instead of a provisional ballot on Election Day. *Id*. Because suit was filed less than three weeks before Election Day and already one week into early voting, the court ordered expedited briefing and an expedited trial, which was held on October 21, 2016. *Id*. at *7. After trial, and with Election Day fast approaching, the Committees moved to modify the relief sought, in view of the proximity of the upcoming elections. The Committees sought to ensure that, even if the October 11th Registrants were not able to cast a regular ballot, their provisional ballots would be counted. *Id*. at *6.

3

On November 3, 2016, the *ADP* court ruled in favor of the Committees on the merits—expressly holding that October 11th, not October 10th, was the lawful deadline. As to state law, the court determined that: i) A.R.S. § 16-120 must be read in conjunction with A.R.S. § 16-134, which expressly permits some voter registrations received after the 29th day before an election to be valid for that election; and, ii) A.R.S. § 1-303 permits acts performed on the day after a holiday to be treated as though they were performed on the holiday. The court further held that the state statutes should be read so as to permit October 11th registrations, "because any application of Ariz. Rev. Stat. § 16-120 that effectively requires [a] voter registration to be received earlier than 30 days before a federal election is superseded by NVRA." *ADP* Opinion at *16.

Despite this holding on the merits, the *ADP* court declined to grant the Committees equitable relief, because, the court found, the Committees should have brought suit sooner. The court held that the prejudice arising from that delay precluded the relief requested (in that action). *Id.* at *16. With only five days before Election Day, "administering the relief sought by the Committees . . . would have the effect of encumbering the election." *Id.* at *18. Moreover, the court declined to require that the Secretary notify voters who registered on October 11th of their right to vote on Election Day. This was not because such voters were ineligible—they were—but because even if the state could identify those voters in

time to send such a notice, there was no assurance that receiving a notice so close to Election Day would encourage rather than dissuade these eligible voters.  *Id.* at *17.  Finally, the court denied as moot the request for modified relief ordering that October 11th Registrants be permitted to cast provisional ballots, because the Secretary acknowledged their right to do so.  The court therefore considered the issue moot.  *Id.* at *12.

A few days after he registered to vote, Mr. Isabel received a mailer from the Maricopa County Recorder confirming his voter registration and including his Voter ID Card and a reminder to bring identification to vote in the November 8, 2016 General Election:

> Your name and information appears in the General Register and this Voter Identification Card contains information relating to your registration on file.
> . . .
> DON'T FORGET to bring your identification with you to vote on Election Day!
> . . .

IMPORTANT ELECTION DATES
FECHAS IMPORTANTES DE ELECCIONES

NOVEMBER 08, 2016 GENERAL ELECTION

[Doc. 60 ¶¶ 26–27.]  On November 8, 2016, Mr. Isabel went to his assigned polling location to cast his ballot.  [*Id.* ¶ 35.]  There, poll workers instructed him to fill out a provisional ballot because he was not on the list of eligible voters.  [*Id.*]  Mr. Isabel duly cast his provisional ballot, which was verified but, despite the

November 3rd ruling by the *ADP* court, never counted. [*Id*. ¶ 37.] Only in 2017, after the certification of election results, did Mr. Isabel first learn his ballot had not been counted. [*Id*. at ¶¶ 42–43.]

## II.   PROCEDURAL HISTORY

On October 9, 2018, Mr. Isabel filed a Class Action Complaint against Defendants. [Doc. 1.] On November 27, 2018, the County Defendants filed a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1). [Doc. 32.] On November 30, 2018, Defendant Reagan filed a motion to dismiss for failure to state a claim under Rule 12(b)(6). [Doc. 33.] After the motions were fully briefed, the District Court heard oral argument on June 5, 2019. [Doc. 50; ER064–109.] On June 7, 2019, the Court denied the County Defendants' motion to dismiss for lack of jurisdiction but granted Defendant Reagan's motion to dismiss for failure to state a claim. [Doc. 54; ER041–063.] Notably, the District Court granted dismissal of Plaintiff's second and third causes of action on grounds not raised by Defendants. [*See* Doc. 54 at 16 ("Both parties miss the mark."); *id.* at 20 ("The parties ignore this issue in their moving papers.").]

On June 27, 2019, the District Court granted Plaintiff's Motion for Leave to File a First Amended Complaint. [Doc. 59.] Plaintiff filed the Amended Complaint on the same day. [Doc. 60.] The Amended Complaint contained three substantive changes: it (i) addressed the District Court's interpretation of HAVA

by alleging an alternative violation; (ii) clarified Count III of the Complaint to assert a violation of the U.S. Constitution's fundamental right to vote; and (iii) limited the claims for punitive damages to Defendant Reagan. On July 5, 2019, Defendant Reagan filed a Motion to Dismiss. [Doc. 61.] On July 8, 2019, the County Defendants joined in Defendant Reagan's Motion without raising any new or individualized arguments. [Doc. 63.] On September 28, 2019, Plaintiff filed a Motion for Class Certification. [Doc. 69.]

On September 30, 2019, the District Court issued a tentative ruling on Defendants' motion to dismiss and invited the parties to submit supplemental briefs because "the tentative ruling identifies grounds for granting dismissal that were arguably not raised in Defendants' motion." [Doc. 71; ER029–040.] Defendant Reagan opted not to file a supplement while Plaintiff and the County Defendants submitted extra briefs on October 15, 2019. [Docs. 73, 75 and 76.] On October 24, 2019, the parties presented oral argument on the Motion to Dismiss. [Doc. 78; ER111–151.] On November 1, 2019, the District Court dismissed Plaintiff's First Amended Complaint with prejudice, on grounds not addressed in the Court's tentative ruling or raised by Defendants. [Doc. 79; ER013–029.]

## STANDARD OF REVIEW

A district court's dismissal for failure to state a claim upon which relief can be granted is reviewed *de novo*. *See Puri v. Khalsa*, 844 F.3d 1152, 1157 (9th Cir.

2017).  This Court must accept as true all well-plead allegations of material fact and construe them in the light most favorable to the plaintiff.  *See id.*  The district court's legal determinations, including constitutional rulings, and its determinations on mixed questions of law and fact that implicate constitutional rights are also reviewed *de novo*.  *Id.*

## SUMMARY OF ARGUMENT

The Amended Complaint states two viable claims under 42 U.S.C. § 1983. Defendants' conduct violated Mr. Isabel's: (1) right under the National Voter Registration Act to register to vote within the time period prescribed by that statute; and, (2) constitutional right to have his vote counted.  *Reynolds v. Sims,* 377 U.S. 533, 554–55 (1964) ("It has been repeatedly recognized that all qualified voters have a constitutionally protected right to vote, and to have their votes counted.").  Both violations are actionable under Section 1983, and because injunctive relief is no longer available, only money damages can redress Mr. Isabel's harm.  *See Wayne v. Venable,* 260 F. 64, 66 (8th Cir. 1919) (recognizing that the right to vote "is so valuable that damages are *presumed* from the wrongful deprivation of it without evidence of actual loss of money, property, or any other valuable thing") (emphasis added).

**ARGUMENT**

**I.    THE DISTRICT COURT ERRED IN DISMISSING PLAINTIFF'S CONSTITUTIONAL SECTION 1983 CLAIM.**

> **A.    The Amended Complaint Sufficiently Alleged a Constitutional Claim for Relief Under 42 U.S.C. § 1983.**

In order to state a Constitutional claim for relief under 42 U.S.C. § 1983, a plaintiff need only allege that: (1) he suffered a violation of rights protected by the Constitution; and, (2) the violation was committed by a person acting under color of state law. *See Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). The first step in a Section 1983 claim is therefore to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). To satisfy the second prong, a plaintiff must allege facts showing how individually named defendants caused, or personally participated in causing, the harm alleged in the complaint. Here, there cannot be any dispute that the right to vote and have one's vote counted is a well-established constitutional right. Defendants merely dispute that they infringed Mr. Isabel's well-established right.

> **1.    Mr. Isabel Timely Registered to Vote in Arizona's November 2016 General Election.**

As a threshold matter, Mr. Isabel sufficiently alleged that he timely registered to vote, because he submitted the appropriate registration form on October 11, 2016 [Doc. 60 ¶ 24], and the National Voter Registration Act of 1993 ("NVRA") provides that the last day to register for the 2016 general election could

9

not have been before October 11, 2016. *See ADP* Opinion at \*13–\*14 (detailing how the NVRA's text plainly precludes any state from setting its November 2016 General Election voter register deadline before October 11, 2016). Thus, Mr. Isabel and the other October 11th Registrants were qualified to vote in the November 2016 General Election.

State law requires the same result. Under [A.R.S. § 1-303](#), when a deadline to perform a function falls on a holiday, "it may be performed on the next ensuing business day with effect as though performed on the appointed day." *See* Ariz. Att. Gen. Op. No. 58-74 (concluding that when the close of registration for a primary election fell on July 4th, A.R.S. § 1-303 instructs that "the registration of electors . . . may be performed on the next ensuing business day with the effect as though performed on the appointed day."). Accordingly, because October 10, 2016 was a state and federal holiday, Mr. Isabel's October 11, 2016 registration was timely under state law. The district court so held in the *ADP* litigation, reasoning further that even if there were ambiguity in Arizona law, any such ambiguity should be resolved in compliance with the NVRA. *ADP* Opinion at \*16.

Nonetheless, Defendants refused to count Mr. Isabel's provisional ballot. Their primary argument below was that Mr. Isabel's registration was not timely, rendering him ineligible to vote in the 2016 General Election. The District Court correctly rejected their argument in its tentative ruling—[*see* Doc. 71 at 9, n.3;

ER037]—but did not explicitly do so in in its final order. [*See, e.g.*, Doc. 79 at 7; ER019 ("[E]ven assuming for the sake of argument that Isabel's interpretation of Arizona law is correct, and that he therefore should have been deemed eligible under state law to vote in the 2016 Election . . . .").] This Court should hold that Mr. Isabel's registration was timely as a matter of both state and federal law.

## 2. As a Qualified Voter, the Constitution Guaranteed Mr. Isabel's Right to Have His Vote Counted.

Although the District Court expressly acknowledged Mr. Isabel's Constitutional right to vote, the District Court essentially held that the right to have one's vote *counted* is not an enforceable right:

> The Supreme Court has described the right to vote as "precious" and "fundamental" and "preservative of all rights"—sentiments with which this Court wholeheartedly agrees. Nevertheless, it doesn't follow that a state election official may be sued for money damages under § 1983 for making an incorrect determination concerning an individual voter's eligibility.

[Doc. 79 at 8; ER020 (footnotes omitted).]

This fine a parsing of so important a Constitutional right defies common sense. After all, "[i]t's not the voting that's democracy, it's the counting[.]" Tom Stoppard, *Jumpers* (New York: Grove Press, 1972), p. 35. Notably, the District Court's holding defies Supreme Court precedent:

> Undeniably the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections. A consistent line of decisions by this Court in cases involving attempts to deny or restrict the right of suffrage has made this indelibly clear.

It has been repeatedly recognized that all qualified voters have a constitutionally protected right to vote, and to have their votes counted.

*Reynolds v. Sims*, 377 U.S. 533, 554–55 (1964) (citations omitted). To hold otherwise would green-light the very kind of bad-faith "counting" performed by Defendants here. In the *ADP* litigation, Defendants acknowledged that October 11th Registrants could cast a provisional ballot, thus mooting the Committees' request for an order regarding provisional ballots. Defendants then cited the Court's lack of an order regarding provisional ballots as license to reject those very provisional ballots, despite the *ADP* court's plain determination that such voters were eligible.

As early as 1941, the Supreme Court affirmed that the Qualifications Clause of Article I, Section 2 of the Constitution "[o]bviously included … the right of qualified voters within a state to cast their ballots and have them counted at Congressional elections." *United States v. Classic*, 313 U.S. 299, 315 (1941). *Classic* is particularly noteworthy because it considered Sections 19 and 20 of the criminal code then in force, the criminal analog of Section 1983 then in force, which employed the same "secured by the Constitution" language as Section 1983. *Id.* at 309–10 (quoting the criminal statutes). Interpreting this language, the Supreme Court decided as a matter of statutory construction, "the right of qualified voters to vote . . . and to have their ballots counted is a right 'secured by the

Constitution'" within the meaning of the criminal statute. *Id.* at 307. In ruling on this central question of the case, the Supreme Court further pointed out that it had previously "consistently held that this is a right secured by the Constitution." *Id.* (citing, *inter alia*, *Wiley v. Sinkler*).

## B. Nothing Precludes Mr. Isabel From Maintaining an Action for Damages Against Defendants Under Section 1983.

Despite clear state and federal law requiring that Mr. Isabel's registration be considered timely, and despite a clear ruling to that effect by the *ADP* court, Defendants' primary argument below was that Mr. Isabel's registration was not timely. Unwilling to grant relief on that obviously erroneous basis, the District Court went to great lengths to find alternate rationales *sua sponte* to dismiss Mr. Isabel's plainly stated claims. Each of the District Court's bases fails under scrutiny.

### 1. The District Court Erred in Equating Plaintiff's Voting-Rights Claims with Sore-Loser Claims.

The District Court sought to downplay the precedential value of *Classic* and to distinguish it. In particular, the District Court reasoned that two subsequent appellate decisions had *sub silentio* reversed *Classic* and the "consistent[]" Supreme Court precedent on which it had relied. [Doc. 79 at 9–10; ER021–22.] Neither case concerned an action by a voter whose ballot was not counted. Rather,

both were actions brought by unsuccessful *candidates* who wished to invalidate or contest election results.

The first of these two cases, *Powell v. Power*, 436 F.2d 84 (2d Cir. 1970), concerned New York Congressman Charles B. "Charlie" Rangel's first run for U.S. Congress.[1]  In the 1970 Democratic Party primary election, Mr. Rangel narrowly defeated the incumbent—12-term Congressman Adam Clayton Powell, Jr.—by 150 votes.  *Id*. at 86 n.2.  Due to a clerical error, more than 1,200 non-party members were permitted to cast a ballot in what was supposed to be a closed primary.  *Id*.  Twelve days before the general election, six pro-Powell voters (including the candidate himself) filed a federal action "alleging that their federal rights were violated by the inadvertent tallying of ballots cast by the unauthorized voters."  *Id*. at 86.  The plaintiffs sought to invalidate the election results.  Initially, the plaintiffs sought to "enjoin the general election for the Congressional seat," and then, following the general election, sought an order "setting aside the primary election and forbidding Rangel's certification as the newly elected Representative of the 18th District."  *Id*.

The district court rejected the plaintiffs' Section 1983 claims because they failed to establish that *their* Constitutional rights were violated in any way:

---

[1]     Mr. Rangel subsequently served 23 terms in the House, from 1971 to 2017.

In simple terms plaintiffs' claim under § 1983 is that the substantial number of irregularities in the primary, without more, denies them Due Process and Equal Protection. No authority has been furnished which supports this proposition, and in our view a question of constitutional dimensions is not presented. The Constitution does not guarantee an 'irregularity-free' election to voters in a state primary election.

*Powell v. Power*, 320 F. Supp. 618, 621 (S.D.N.Y. 1970). On an expedited appeal, the Second Circuit affirmed. *Powell*, 436 F.2d at 88 ("[W]e cannot believe that the framers of our Constitution were so hypersensitive to ordinary human frailties as to lay down an unrealistic requirement that elections be free of any error.").

The second case cited by the District Court below, *Hutchinson v. Miller*, 797 F.2d 1279 (4th Cir. 1986), concerned an action for damages brought by three unsuccessful candidates in the 1980 general election in West Virginia. *Id.* at 1279–80. The candidates alleged that the election night totals were rigged by state elections officials. *See id.* at 1280–81. The district court entered a directed verdict in favor of defendants at the close of plaintiff's case-in-chief:

The court held that plaintiffs had failed to prove a conspiracy, noting that the only evidence the election was rigged was "purely speculative . . . mere suspicion." It also found that plaintiffs Reese and Hutchinson had not shown that they were harmed by the alleged actions; there was no evidence that their large losses would have been victories in the absence of the alleged conspiracy. Further, finding only "mere election irregularities" and no evidence to suggest that the election was fundamentally unfair, the court held that plaintiffs had failed to prove a deprivation of a constitutional right essential to a § 1983 action.

*Id.* at 1282. In affirming the district court's dismissal, the Fourth Circuit noted that

> This suit, however, asks us to consider the award of damages for election irregularities *that neither disenfranchised a class of voters* nor impugned state and federal procedures for the proper conduct of elections. In this essentially factual dispute, we defer to those primarily responsible for elections and we refuse to authorize yet another avenue for those disgruntled with the political process to keep the contest alive in the courtroom.

*Id*. at 1280 (emphasis added). In other words, the *Hutchinson* court held "that federal courts are not available for awards of damages to *defeated candidates*." *Id*. (emphasis added).[2]

Here, contrary to the District Court's characterization, Mr. Isabel's claims are unlike those asserted in *Powell* and *Hutchinson*. Mr. Isabel is *not* claiming that he has a Constitutional right to an error-free election. Nor does Mr. Isabel contest the election's results. He merely seeks to vindicate *his* personal right to have his vote counted. Unlike like the plaintiffs in *Powell* and *Hutchinson*, Mr. Isabel seeks an award of damages for injuries caused by official conduct that "disenfranchised a class of voters," one which included him. *Hutchinson, 797 F.2d at 1280*. The District Court improperly equated Mr. Isabel's claim with the unviable claims asserted by defeated candidates. This was error.

---

[2] The *Hutchinson* court did not decide whether equitable relief would have been appropriate, because the plaintiffs in *Hutchinson* "[sought] no equitable relief." 797 F.2d at 1280.

2. **Contrary to the District Court's Holding, Elections Officials Can and Should Be Liable for Monetary Damages.**

Though rarely asked to do so, courts have consistently upheld the right to seek compensatory damages for the violation of the right to vote. In fact, there was a period of time when the "the use of section 1983 was for the most part confined to deprivations of voting rights." Note, *The Background of Section 1983*, 90 HARV. L. REV. 1137, 1167 (1977). For example, in a 1927 opinion authored by Justice Oliver Wendell Holmes, Jr., the Supreme Court held that the right to seek damages for deprivations of the right to vote had been established for over 200 years:

> That private damage may be caused by such political action and may be recovered for in suit at law hardly has been doubted for over two hundred years, since *Ashby v. White*, 2 Ld. Raym. 938, 3 Ld. Raym. 320, and has been recognized by this Court. *Wiley v. Sinkler*, 179 U. S. 58, 64, 65, 21 S. Ct. 17, 45 L. Ed. 84; *Giles v. Harris*, 189 U. S. 475, 485, 23 S. Ct. 639, 47 L. Ed. 909. *See also* Judicial Code, s 24(11), (12), (14); Act of March 3, 1911, c. 231; 36 Stat. 1087, 1092 (Comp. St. s 991). If the defendants' conduct was a wrong to the plaintiff the same reasons that allow a recovery for denying the plaintiff a vote at a final election allow it for denying a vote at the primary election that may determine the final result.

*Nixon v. Herndon*, 273 U.S. 536, 540 (1927); *see also* *Taylor v. Howe*, 225 F.3d 993, 1012 (8th Cir. 2000) ("[P]ersons whose right to vote was denied altogether should be entitled to more than nominal damages."); *Wayne v. Venable*, 260 F. 64, 65 (8th Cir. 1919) (affirming an award of damages where plaintiffs established that they were prevented "from casting their votes [] for presidential electors, United

States Senator, and a member of Congress at the general election in that township on November 7, 1916, when and where presidential electors, a United States Senator, and a member of Congress were to be voted for and elected").

The District Court below cited *Wiley v. Sinkler*, 179 U.S. 58 (1990), for the proposition that damages actions against elections officials would be inappropriate. [Doc. 79 at 13 (contending in a parenthetical that *Wiley* "suggest[s] it would be inappropriate to 'subject[] election officers to an action for damages for refusing a vote which the statute under which they are appointed forbids them to receive it'"); ER025.]  Yet, the Supreme Court's decision in *Nixon* specifically lists *Wiley* among the cases establishing the right to pursue damages for the deprivation of the right to vote.  Moreover, *Wiley* has long been recognized as one of the earliest Supreme Court decisions to *recognize* the right to pursue an action for damages in the voting rights context:

> In 1900, for example, in *Wiley v. Sinkler*, the Supreme Court considered the claim of a South Carolina resident who sought $2,500 in damages against the state election officials who refused to accept his vote in the federal election.  The Court found the plaintiff's pleadings insufficient because he never alleged that he was registered to vote, indicating that, had he so alleged, he would have stated a claim on which damages could issue under Article I, Section 2.  The Court explained that "[t]he right to vote for members of the Congress . . . has its foundation in the Constitution of the United States."

The Honorable Marsha S. Berzon, *Securing Fragile Foundations: Affirmative Constitutional Adjudication in Federal Courts*, 84 N.Y.U. L. Rev. 681, 693–94

(2009) (footnotes omitted); *see also* Samuel Issacharoff, *Voting Rights at 50*, 67 ALA. L. REV. 387, 414 n.92 (2015) ("The background for private damages caused by political action was a series of Supreme Court and lower federal court cases [including *Wiley* and *Wayne*] involving white plaintiffs who had been deprived of their right to vote and had sued under federal question jurisdiction.").  In fact, just two years after *Wiley*, the Supreme Court, citing *Wiley*, reinstated a suit for damages against state election officials for the deprivation of the right to vote in a congressional election.  *See Swafford v. Templeton*, 185 U.S. 487 (1902) (noting that the holding was "rendered necessary by the decision in *Wiley v. Sinkler*").  Contrary to the District Court's holding, *Wiley* <u>endorses</u> Mr. Isabel's claim for monetary damages.

### C. The District Court Mischaracterized the Holding and Misunderstood the Relevance of the *ADP* Opinion.

Defendants willfully ignored the ruling in the *ADP* Opinion when they made the determination not to count Mr. Isabel's provisional ballot.  The District Court erred in holding that the *ADP* court's decision not to grant an injunction could be treated as a license to count Mr. Isabel's ballot however they wished—in this case,

not at all.[3]  Specifically, the District Court found that the "the judge [in *ADP v. Reagan*] *denied* a request for an injunction to require the Secretary to count provisional ballots cast by voters (like Isabel)" and "concluded that the Secretary wasn't required to count provisional ballots cast by voters who had registered on October 11, that the Secretary had legitimate reasons for declining to extend the registration deadline or count such ballots, and that the Secretary's conduct was constitutional."  [Doc. 79 at 12–13; ER024–25].  This misstates the *ADP* court's ruling.

First, as noted above, the *ADP* court denied *as moot* the Committees' request for modified relief ordering that October 11th Registrants be permitted to cast provisional ballots, because the Defendants acknowledged their right to do so. *ADP v. Reagan*, 2016 WL 6523427, at *12 ("[W]ith regard to the Committees' request that the Court order the Secretary to ensure that the October 11, 2016 voter registrants may cast provisional ballots, that demand is moot.").  Notably, the *ADP* court did not read the plaintiffs' motion as requesting a declaration of the eligibility of such voters under state and federal law, but noted that even if they had so requested, any ruling on that question would have constituted an impermissible

---

[3]  The District Court's interpretation of the Help America Vote Act is equally absurd and should be reversed.  [*See* Doc. 54 at 16–17; ER056–57 (holding that elections officials aren't required to count provisional ballots of qualified voters, if they incorrectly determine that the voter isn't qualified).]

advisory opinion in the absence of an actual voter who had been determined to be ineligible. *Id.* at *16, n.15. Moreover, the *ADP* court's evaluation of the other permanent injunction factors cannot derogate from its plain holding that the *ADP* plaintiffs demonstrated actual success on the merits of their claim. There is no way of reconciling that success on the merits with any legal theory that would have left Mr. Isabel or any of the other October 11th Registrants ineligible to vote in the November 2016 Election.

Second, the District Court appears to have adopted the Defendants' argument below that because they "deemed" Mr. Isabel ineligible, he somehow was. [*Cf.* Doc. 54 at 16 (holding that the Help America Vote Act "requires a provisional ballot to be counted only if the appropriate election official 'determines' the individual to be eligible"); ER056.] This audacious theory would use Defendants' very violation of state and federal law to immunize their unlawful conduct from liability. Courts have consistently rejected other similar attempts. *See, e.g., Lawrence v. Reed*, 406 F.3d 1224, 1231–32 (10th Cir. 2005) (McConnell, J.) (officers cannot rely on clearly unconstitutional ordinance authorizing seizure of derelict vehicles to immunize unlawful conduct); *United States v. Robeles-Ortega,* 348 F.3d 679, 683–85 (7th Cir. 2003) (holding that officers cannot use their unlawful act as the basis for an inference of consent).

**D.    The District Court Improperly Imposed a Heightened State-of-Mind Pleading Requirement.**

"Section 1983 itself 'contains no state-of-mind requirement independent of that necessary to state a violation' of the underlying federal right." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 405 (1997) (quoting *Daniels v. Williams*, 474 U.S. 327, 330 (1986)).  For example, to bring a malicious prosecution claim under § 1983, a plaintiff must allege that the defendants prosecuted the plaintiff with the intent to deprive him of a constitutional right.  *See Lacey v. Maricopa County*, 693 F.3d 896, 919 (9th Cir. 2012); *see also Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (an equal protection claim under the § 1983 requires, as a necessary element, that defendants acted with the intent to discriminate).

Here, the District Court dismissed Mr. Isabel's § 1983 claim because "the FAC doesn't plausibly allege that Defendants acted with a culpable mindset." [Doc. 79 at 16; ER028.]  No court, however, has ever held that a Section 1983 voting-rights claim must establish an improper motive, let alone a culpable mindset.  A plaintiff need only establish that the defendants caused plaintiff's injury.  *Cf. Daniels*, 474 U.S. 329–30 at ("After examining the language, legislative history, and prior interpretations of the statute, we concluded that § 1983, unlike its criminal counterpart, 18 U.S.C. § 242, contains no state-of-mind requirement independent of that necessary to state a violation of the underlying constitutional right.").

Even if Mr. Isabel was required to establish an improper motive, the District Court erred in requiring him to meet a *heightened*-pleading standard. In *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002), the Ninth Circuit held that a heightened-pleading standard is not required for § 1983 claims even where the underlying constitutional tort action requires an improper motive. *Id*. at 1125–26. This Court held that only a short and plain statement showing that the pleader is entitled to relief is required for § 1983 claims, as stated in Federal Rule of Civil Procedure 8(a)(2). *Id*. (citing *Crawford-El v. Britton*, 523 U.S. 574 (1998)).

Regardless, Plaintiff's allegations establish that the Defendants acted intentionally and willfully. The District Court misapprehended the import of Mr. Isabel's allegations regarding the 2018 Elections Procedures Manual. Mr. Isabel alleges that:

29. Upon information and belief, the Defendants had notice of Judge Logan's order and its contents on or before November 8, 2016.

30. Upon information and belief, the Defendants understood that Judge Logan's order established that the October 10, 2016 deadline violated federal and state law.

31. Moreover, upon information and belief, Defendants understood that federal and state law *required* them to consider any voter who registered on October 11, 2016, including Plaintiff Isabel, eligible to cast a ballot in the November 2016 Election.

32. This understanding is plainly reflected in the 2018 Elections Procedures Manual at § 1.12.1.3.3 ("Eligibility When Registration Deadline Falls on a Weekend or Holiday), which cites to Judge Logan's Order for the proposition that "the voter registration deadline

must be moved closer to election day if the closure of State or Federal offices would cause a method of registration to be unavailable within the 30-day period preceding the next election." *See* 2018 Elections Procedures Manual at § 1.12.1.3.3 (emphasis added).

33. On information and belief, Defendant Reagan personally and formally approved the 2018 Elections Procedures Manual, which included the language cited above.

34. Moreover, on information and belief, the Arizona Attorney General reviewed Defendant Reagan's proposed 2018 Elections Procedures Manual, which included the language cited above, for legal errors, approved it without alterations, and submitted it to the Arizona Governor for his signature.

[Doc. 60 at ¶¶ 29–34.] These allegations plausibly establish that the Defendants willfully violated his rights. The District Court, however, dismissed the language from the 2018 Elections Procedures Manual as nothing more than a subsequent remedial measure that does "not plausibly show that Defendants acted with a culpable mindset during the 2016 election cycle." [Doc. 79 at 13; ER025.] However, the Secretary's discussion of the *ADP* court's holding in the 2018 Manual isn't a subsequent remedial measure. It's simply a public, formal acknowledgement that she understood the *ADP* court's holding. Moreover, the rule prohibiting the use of subsequent remedial measures to establish liability is an evidentiary rule that is inapplicable at the pleading stage. *See Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510–11 (2002) (holding that evidentiary burdens do not apply at the pleading stage). Indeed, even at summary judgment, evidence in a

form inadmissible at trial may be considered so long as the party satisfies the requirements of Rule 56.[4]

In sum, Mr. Isabel sufficiently alleged that Defendants deprived him of his constitutional right to vote, and he should be permitted to proceed with his Section 1983 action for constitutional damages.

## II.    VIOLATIONS OF THE NVRA ARE SUBJECT TO A SECTION 1983 CLAIM FOR MONETARY DAMAGES.

The District Court ruled that Mr. Isabel could not maintain a Section 1983 action for damages for violating the NVRA, because the NVRA does not include a provision for money damages.   [Doc. 54 at 14; ER054].   The District Court's decision improperly narrows the NVRA's Savings Clause, which expressly recognizes the right to pursue other remedies provided by other laws.

### A.    Section 11(d) of the NVRA Reflects Congressional Intent to Authorize Section 1983 Actions for Damages.

Section 1983 provides a private right of action against a person who, under color of state law, deprives another of rights secured by the Constitution or by federal law.   To determine whether recovery under a specific federal statute is available through Section 1983, courts must decide "(i) whether Congress ha[s]

---

[4]    The case cited by the District Court, *Noble v. McClatchy Newspapers*, 533 F.2d 1081 (9th Cir. 1975), concerned an evidentiary ruling at trial.   Regardless, the Ninth Circuit's opinion was vacated by the Supreme Court.   *Noble v. McClatchy Newspapers*, 433 U.S. 904 (1977).

foreclosed private enforcement of that statute in the enactment itself, and (ii) whether the statute at issue [is] the kind that created enforceable rights under § 1983." *Middlesex Cnty. Sewerage Auth. v. Natl Sea Clammers Ass'n*, 453 U.S. 1, 19 (1981) (internal quotations omitted). Because Section 1983 has long been "an independent safeguard against deprivations of federal constitutional and statutory rights," courts will not "lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy" for the deprivation of a federal right. *Smith v. Robinson*, 468 U.S. 992, 1012 (1984). As a result, the Supreme Court has instructed courts to *presume* that a federal statute is enforceable under Section 1983, if the statute creates an enforceable right. *See City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 120 (2005) (reaffirming that courts apply "a rebuttable presumption that the right is enforceable under § 1983").

Here, there is no dispute that the NVRA is entitled to such a presumption, because it expressly authorizes an aggrieved person to "bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation." 52 U.S.C. § 20510(b). As a result, the only question before this Court is whether the NVRA's remedial scheme evidences sufficient Congressional intent to preclude a Section 1983 action to overcome such a presumption. The NVRA's Savings Clause conclusively answers this question.

Congress directly addressed the NVRA's supplemental nature in a section concerning the NVRA's "[r]elation to other laws," 52 U.S.C. § 20510(d). That section provides:

> The rights and remedies established by this section are in addition to all other rights and remedies provided by law, and neither the rights and remedies established by this section nor any other provision of this chapter shall supersede, restrict, or limit the application of the Voting Rights Act of 1965.

Section 11(d) of the NVRA ("Civil Enforcement and Private Right of Action"), codified at 52 U.S.C. § 20510(d)(1) (hereinafter referred to as the "NVRA's Savings Clause").

The prior-construction canon of statutory interpretation makes clear that Congress intended the NVRA to be enforced by *other* remedies provided by *other* laws. Under the prior-construction canon, when judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute is presumed to incorporate that interpretation. *Bragdon v. Abbott*, 524 U.S. 624, 645 (1998).

The NVRA's Savings Clause is nearly identical to the savings clauses included in the Securities Act of 1933 and the Securities Exchange Act of 1934, which were subject to a 1983 Supreme Court decision, *Herman & MacLean v. Huddleston*, 459 U.S. 375 (1983). Section 16 of the Securities Act of 1933 provides that "the rights and remedies provided by this subchapter shall be in

addition to any and all other rights and remedies that may exist at law or in equity."

15 U.S.C. § 77p(a). Similarly, Section 28 of the Securities Exchange Act of 1934

provides that "the rights and remedies provided by this chapter shall be in addition

to any and all other rights and remedies that may exist at law or in equity." *Id.* at

§ 78bb(a). In *Herman*, the Supreme Court held that these savings clauses evidence

Congress's intent to supplement, not preclude:

> In savings clauses included in the 1933 and 1934 Acts, Congress
> *rejected* the notion that the express remedies of the securities laws
> would preempt all other rights of action. Section 16 of the 1933 Act
> states unequivocally that "[t]he rights and remedies provided by this
> subchapter shall be in addition to any and all other rights and remedies
> that may exist at law or in equity." 15 U.S.C. § 77p. Section 28(a) of
> the 1934 Act contains a parallel provision. 15 U.S.C. § 78bb(a).
> *These provisions confirm that the remedies in each Act were to be
> supplemented by "any and all" additional remedies*.

459 U.S. at 383 (emphasis added).

Given how closely the NVRA's Savings Clause tracks the provisions at

issue in *Herman*, this Court should presume that Congress intended the NVRA's

Savings Clause to be given the same meaning. *See Cannon v. Univ. of Chicago,*

*441 U.S. 677, 696–98 (1979)* (holding that in interpreting a newly enacted statute

using the same words as an existing statute, Congress is presumed to have intended

the same construction to apply to the new statute as applied to the existing statute);

*Miranda B. v. Kitzhaber, 328 F.3d 1181, 1189 (9th Cir. 2003)* (holding that

"Congress is presumed to know the law and to have incorporated judicial interpretations when adopting a preexisting remedial scheme").

Nevertheless, the District Court rejected this interpretation of the NVRA's Savings Clause, holding that "[t]he savings clause in the NVRA is similar to the savings clauses at issue in *Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1 (1981), in which the Supreme Court determined that a § 1983 action wasn't available for a violation of the Federal Water Pollution Control Act ('FWPCA') or the Marine Protection, Research, and Sanctuaries Act of 1972 ('MPRSA')." [Doc. 54 at 12; ER052.] The savings clauses at issue in *Middlesex*, however, stated only a limited intent not to interfere with rights that had existed before the relevant statutes had been enacted, but were silent on whether the rights *created by* the statutes in question could be enforced by remedies provided elsewhere. *Middlesex, 453 U.S. at 7 n.10* ("Nothing in this section shall restrict any right which any person … may have … to seek enforcement of any effluent standard or limitation or to seek any other relief…."). In contrast, the NVRA's Savings Clause, like the clauses at issue in *Herman*, provides that the express remedies are "in addition to"—i.e., not exclusive of—"all other rights and remedies provided by law." As such, the District Court should have read the NVRA's Savings Clause in conformity with the Supreme Court's prior construction and permitted Plaintiff to proceed with his NVRA claim. *Cf. United*

*States v. Wells*, 519 U.S. 482, 495 (1997) ("Since we presume that Congress expects its statutes to be read in conformity with this Court's precedents . . . and since the relevant language of the statute in *Kay* was substantially like that in § 1014, *Kay* stands in the way of any assumption that Congress might have understood an express materiality provision to be redundant.").

## B.    The NVRA Does Not Preclude Plaintiff's Constitutional § 1983 Claims.

Even if this Court concludes that Mr. Isabel's NVRA-based Section 1983 claim is precluded, his constitutional Section 1983 claim should survive. Mr. Isabel's NVRA-based claim (Count I) and his constitutional claim (Count III) are distinct. Count I of the Amended Complaint asserts that Mr. Isabel's right to *register,* established by the NVRA, was violated while Count III alleges a violation of his constitutional right to *vote*. Had Mr. Isabel not shown up on Election Day and submitted a provisional ballot, it might have been more difficult for him to establish a violation of his right to vote.

Nothing in the NVRA even suggests that the statute was intended to limit the relief available to a voter for a violation of his constitutional rights. This Court's decision in *Stilwell v. City of Williams*, 831 F.3d 1234 (9th Cir. 2016), is instructive. In that case, this Court held that the retaliation provision of the Age Discrimination in Employment Act (ADEA) did not preclude the plaintiff's Section 1983 claim of retaliation under the First Amendment based on allegations

that he was terminated for planning to testify against his employer in a lawsuit relating to age discrimination. This Court found that, in comparison with the First Amendment, the ADEA's retaliation provision provided less protection to victims of retaliation, did not allow for suit against individuals, required plaintiffs to bear a heavier burden of proof, and excluded certain remedies. *Id*. at 1246–48. This Court concluded that "if there are differences in the protections offered by the statute as compared to those provided by the Constitution . . . we will not hold § 1983 suits to be precluded unless Congress manifested an intent to preclude." *Id*. at 1248 (citing *Fitzgerald v. Barnstable Sch. Comm., 555 U.S. 246, 259 n.2 (2009)*). Accordingly, this Court reversed the district court's conclusion that a Section 1983 claim was precluded by the ADEA.

Thus, even if this Court interprets the NVRA to preclude a Section 1983 damages claim due to violations of the statute, then under *Stilwell* that reading would not extend to Mr. Isabel's qualitatively different constitutional Section 1983 claim. *Cf. Montz v. Pilgrim Films & Television, Inc., 649 F.3d 975, 981 (9th Cir. 2011)* (en banc) ("Plaintiffs' claim for breach of confidence also survives copyright preemption [because it requires] an extra element that makes it qualitatively different from a copyright claim.").

## REQUEST FOR ATTORNEYS' FEES

Pursuant to 42 U.S.C. § 1988, Federal Rule of Appellate Procedure 39, and 9th Circuit Rule 39–1, Plaintiff-Appellant requests that this Court award him attorneys' fees and costs incurred on appeal and in the district court proceedings. *See Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (holding that a prevailing civil rights plaintiff "should ordinarily recover" attorneys' fees).

## CONCLUSION

For the foregoing reasons, Plaintiff-Appellant David Isabel respectfully requests that this Court vacate the District Court's judgment of dismissal and remand for trial on the merits.

Dated: April 6, 2020

Respectfully submitted,

*/s/ Spencer G. Scharff*
Spencer G. Scharff
SCHARFF PLLC

Nathan Fidel
MILLER, PITT, FELDMAN & MCANALLY P.C.

Scott Caplan
THE LAW OFFICE OF SCOTT CAPLAN, P.C.

*Counsel for Plaintiff-Appellant*
*David Isabel*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel for Plaintiff-Appellant, certifies that this brief complies with the length limits permitted by Ninth Circuit Rule 32-1(a). The brief contains 7,617 words, excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

Dated: April 6, 2020                    Scharff PLLC

                                        *s/ Spencer G. Scharff*
                                        Spencer G. Scharff

## STATEMENT REGARDING RELATED CASES

Pursuant to Circuit Rule 28-2.6, Plaintiff-Appellant is not aware of any other related cases.


Dated:  April 6, 2020                                 Scharff PLLC

                                                      *s/ Spencer G. Scharff*
                                                      Spencer G. Scharff

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on April 6, 2020 for filing and transmittal of a Notice of Electronic Filing:


Dated:  April 6, 2020                    Scharff PLLC

                                             *s/ Spencer G. Scharff*
                                             Spencer G. Scharff