No. 19-17397

––––––––––––––––––––––

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

––––––––––––––––––––––

DAVID ISABEL, individually and on behalf of all others similarly situated,

Plaintiff-Appellants.

vs.

MICHELE REAGAN, in her individual capacity; *et al.*,

Defendants-Appellees.

––––––––––––––––––––––

**DEFENDANT-APPELLEE MICHELE REAGAN'S ANSWERING BRIEF**

––––––––––––––––––––––

Appeal from the United States District Court
District of Arizona
CV18-03217-PHX-DWL

––––––––––––––––––––––

**TIMOTHY A. LA SOTA, PLC**
Timothy A. La Sota (020539)
2198 East Camelback Road, Suite 305
Phoenix, Arizona 85016
602-515-2649
tim@timlasota.com
Attorney for Michele Reagan

# TABLE OF CONTENTS

Section                                                                    Page

TABLE OF CONTENTS…………….........................................................2

TABLE OF AUTHORITIES…………………………………………………4

**ARGUMENT**………………………………………………………………7

**I.    INTRODUCTION**…..………………………………………………7

**II.   THE DISTRICT COURT PROPERLY DISMISSED
       PLAINTIFF'S 1983 CLAIM**………………………………………..9

    **A.    THE AMENDED COMPLAINT FAILED TO ALLEGE
              VIABLE GROUNDS FOR RELIEF**…………………………...9

        **1.    Mr. Isabel was NOT registered in time for the
                     2016 General Election**…………………………………9

            a.    Mr. Isabel is wrong on the deadline to register
                           to vote imposed by Arizona law……………………9

            b.    Mr. Isabel's claim that setting the deadline on
                           October 10, 2016 also lacks merit…………………..13

        **2.    Mr. Isabel's constitutional rights were not unduly
                     burdened by the deadline, even if improperly
                     imposed, and there is no right to sue for monetary
                     damages in such an instance**…………………………..16

            a.    Plaintiff's attempt to avoid existing, binding
                           case law on voter registration deadlines and
                           their relationship to constitutional rights is
                           unavailing………………………………………16

            b.    The cases cited by the Plaintiff to Support a
                           Constitutional claim for monetary damages

involve egregious factual situations not present here…………………………………………………………..19

**B. MR. ISABEL IS PRECLUDED FROM USING THE NVRA, AND ITS REQUIREMENTS, AS THE BASIS FOR AN AWARD OF MONEY DAMAGES**…………………23

    **1. Money damages are not available Under the NVRA or any other theory of Mr. Isabel's**…………….....23

    **2. The so-called "sore loser" cases are not directly on point but are nonetheless instructive as to how federal courts apply the law**………………………...28

**C. THE DISTRICT COURT PROPERLY CHARACTERIZED THE *ADP* OPINION**……………………31

**D. THE DISTRICT COURT DID NOT IMPOSE A HEIGHTENED PLEADING STANDARD**……………………....36

**III. VIOLATIONS OF THE NVRA ARE NOT SUBJECT TO MONETARY DAMAGES**…………………………………………..39

    **A. THE NVRA'S STATED REMEDIES ARE CLEAR AND PRECLUDE MONETARY RELIEF**……………………39

    **B. THE NVRA DOES NOT HAVE A BEARING ON CONSTITUTIONAL CLAIMS**……………………………...39

**IV. CONCLUSION**………………………………………………………40

# TABLE OF AUTHORITIES

## Cases

*Arizona Democratic Party v. Reagan*, 2016 WL 6523427 (D.Ariz. 2016)….*passim*

*Barilla v. Ervin*, 886 F.2d 1514 (9th Cir. 1989)……………………………17, 19, 20

*Board of Sup'rs. of Maricopa County v. Superior Court,*
    *Maricopa County*, 446 P.2d 231, 103 Ariz. 502 (1968)…………10, 11, 12, 34

*Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002)……………………………….24

*Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242 (2010)………………..14, 35

*Hutchinson v. Miller*, 797 F.2d 1279 (4th Cir. 1986)……………………...28, 29, 30

*Jackson v. Southern Cal. Gas Co.*, 881 F.2d 638 (9th Cir.1989)………………...15

*Lawrence v. Reed*, 406 F.3d 1224 (10th Cir. 2005)……………………………...36

*Maine v. Thiboutot*, 448 U.S. 1 (1980)……………………………………………….24

*Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n,*
    453 U.S. 1 (1981)……………………………………………………………24, 27

*Nixon v. Herndon*, 273 U.S. 536 (1927)…………………………………………...21

*Powell v. Power*, 436 F.2d 84 (2nd Cir. 1970)……………………………28, 29, 30

*Rosario v. Rockefeller*, 410 U.S. 752 (1973)………………………...17, 18, 19, 20

*Simpson v. Lear Astronics Corp.*, 77 F.3d 1170 (9th Cir.1996))………………17

*Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999)…………………………...28

*Stilwell v. City of Williams*, 831 F.3d 1234, 1244 (9th Cir. 2016)……………...24

*Taylor v. Howe*, 225 F.3d 993 (8th Cir. 2000)………………………………...21

*Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*,
   444 U.S. 11, 19-20 (1979)……………………………………………..25

*Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*,
   982 F.2d 363 (9th Cir. 1992)…………………………………………..15

*United States. v. Classic*, 313 U.S. 299 (1941)……………………………22, 29

*United States v. Robeles-Ortega*, 348 F.3d 679 (7th Cir. 2003)………………...36

*Wayne v. Venable*, 260 F. 64, 65 (8th Cir. 1919)………………………………..21

*Wiley v. Sinkler*, 179 U.S. 58 (1900)……………………………………………..21

## **Statutes**

42 U.S.C. § 1983...…………………………………………….8, 16, 22,  27, 34

52 U.S.C. § 20501...……………………………………………...7, 25-26

52 U.S.C. § 20504…………………………………………………………12

52 U.S.C. § 20507…………………………………………………13, 15

52 U.S.C. 20510……………………………………………………25, 26, 27

A.R.S. § 16-120……………………………………………………9, 12, 34, 37

A.R.S. § 16-134……………………………………………………12, 13

A.R.S. § 1-243……………………………………………………11

A.R.S. § 1-303…...…………………………………………….....9, 10, 11

A.R.S. § 16-1104…...……………………………………………....10, 11

A.R.S. § 19-121……………………………………………………...12

Chapter 262, 2017 Regular Arizona Legislative Session……………………37

**<u>Other Authority</u>**

House Report, Report Number 103-9, at 20 (1993)……………………………26

Senate Report, Report Number 103-6, at 36-37 (1993)………………………..26

# ARGUMENT

## I.    INTRODUCTION

The District Court properly dismissed the Plaintiff's cause of action for failure to state a claim upon which relief could be granted.  Plaintiff did not register in time to vote for the 2016 general election, and thus his ballot could not be counted by law.  Arizona law sets a minimum amount of time a person must be registered to vote in a general election of 29 days and Plaintiff registered fewer than 29 days prior to the general election.

The National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501 *et seq*., provides that state law controls if its minimum time period is fewer than 30 days, as Arizona's is.  Plaintiff tries to avoid the deadline by asking the Court to essentially add words, exceptions and provisos to the NVRA that would permit him to claim that he was actually properly registered in time.  All of these efforts are unavailing.

In addition, even if the Secretary did err in affirming that the deadline for registering was in fact the 29th day preceding the general election, Monday October 11, 2016, the state holiday of Columbus Day, Plaintiff still has no cause of action.  The NVRA, the foundation that this entire cause of action rests on, provides a clear remedy scheme and monetary damages are conspicuously absent from this scheme.  Such damages are not awardable under the NVRA.

The Plaintiff attempts to marry the NVRA with parts of the United States

Constitution to produce a viable claim.  These efforts fail, as the implementation of the October 11, 2016 deadline for registering did not impose an unconstitutional burden on Mr. Isabel's rights, as the District Court found in 2016.  In that court's words, persons in Mr. Isabel's situation "could have registered in time for the general election, but unfortunately did not do so."  *Arizona Democratic Party v. Reagan*[1], 2016 WL 6523427, at *9 (D.Ariz. 2016).

The constitutional claims also fail because under the particular circumstances of this matter, even if there was an error by the Secretary in implementing the deadline to register to vote in time for the general election, this is not redressable by monetary damages, as the District Court found.

The District Court's dismissal should be affirmed.

---

[1] This case is referred to as "ADP" or the "2016 District Court case."  Similarly, the 2019 case that is the subject of this appeal is at times referred to as the "2019 District Court case".

## II. THE DISTRICT COURT PROPERLY DISMISSED PLAINTIFF'S 1983 CLAIM

### A. THE AMENDED COMPLAINT FAILED TO ALLEGE VIABLE GROUNDS FOR RELIEF

#### 1. Mr. Isabel was NOT registered in time for the 2016 General Election

##### a. <u>Mr. Isabel is wrong on the deadline to register to vote imposed by Arizona law</u>

A.R.S. § 16-120 provided, at all times relevant to this matter, that "[n]o elector shall vote in an election called pursuant to the laws of this state unless the elector has been registered to vote…and the registration has been received by the county recorder …prior to midnight of the twenty-ninth day preceding the date of the election."

In 2016, the general election was held on November 8. The "twenty-ninth day preceding" November 8 was Monday, October 10, 2016, which was also Columbus Day, a state holiday. State offices were closed, but Plaintiff is wrong in contending that under A.R.S. § 1-303, any registrations received on Tuesday, October 11, 2016, the date he registered on, were, as a matter of law, received in time to vote in that election. This is not so.

Under Arizona law, if the relevant the state statute merely provided that the voter registration deadline was October 10, Plaintiff would be correct. A.R.S. § 1-303. However, under Arizona law, a clear distinction is drawn between deadlines

that either set a time limit for doing something, such as five days, or state an actual date as a deadline, such as "October 10", on the one hand, and time restrictions that require that something be done a minimum statutorily required time period prior to some event, on the other hand. *Board of Supervisors. of Maricopa County v. Superior Court, Maricopa County*, 446 P.2d 231, 233, 103 Ariz. 502, 504 (1968). In the latter case, which A.R.S. § 16-120 falls into, the deadline is strictly imposed, and A.R.S. 1-303 does not serve to move the deadline to the following day that is not a Saturday, Sunday, or holiday.

The Arizona Supreme Court made this distinction clear in *Board of Supervisors*. The issue there involved a statute that required official absentee ballots to be delivered to the county recorders "not less than thirty days prior to a primary election." *Id.* (quoting then A.R.S. 16-1104(B). In that particular year, thirty days prior to the September 10 election was August 11, a Sunday. The Supreme Court rejected the proposition that this deadline must be moved to the next day, Monday, August 12:

> Normally, when the last day to do an act falls on a Sunday, A.R.S. ss 1—243 and 1—303 provide that it may be performed on the next ensuing business day. These statutes, however, apply to 'the time in which an act is required to be done' or when it is provided that anything is 'to be done upon a day named or within a time named'. s 16—1104, subsec. B is a statute dealing with elections and uses the words 'not less than thirty days prior'. If we allow an additional day to deliver the ballots because the last day falls upon a Sunday, the delivery will no longer be 'thirty days prior'. We believe this statute is to be strictly construed. Therefore, the phrase 'not less than thirty days' is to be

followed strictly. McLoughlin v. City of Prescott, 39 Ariz. 286, 6 P.2d 50 (1931). Since the Recorder's office is closed on Saturdays as well as Sundays and evenings, delivery may have to be made by 5:00 p.m., Friday, August 9, 1968, which gives only two days from the filing of the petition herein.

*Board of Sup'rs of Maricopa County*, 446 P.2d at 233, 103 Ariz. at 504.

The Arizona Supreme Court noted in *Board of Supervisors* that the only statutes that permit the deadline to be moved to a later date due to the deadline falling on a weekend or holiday are statutes that prescribe "'the time in which an act is required to be done' or when it is provided that anything is 'to be done upon a day named or within a time named.'" *Id., quoting* A.R.S. §§ 1-243, 1-303. As the court pointed out, however, § 16–1104(B) contained the words "not less than thirty days prior" to the election. Therefore, the court said, "[i]f we allow an additional day to deliver the ballots because the last day falls upon a Sunday, the delivery will no longer be 'thirty days prior' [to the election]." *Id.* The court concluded that, notwithstanding the effective Sunday deadline, this deadline could not legally be moved to the following day, Monday. *Id.*

In this instance, it is not entirely clear whether Mr. Isabel registered in person or online. His First Amended Complaint merely states that on October 11, 2016, "he registered to vote with the Arizona Motor Vehicle Department ('MVD')." (¶ 9). In Arizona, this could be either online or in person. *See ADP*, 2016 WL 6523427, at *2-3 (discussing various ways one may register to vote in Arizona). But

on this point, it does not matter—Mr. Isabel's registration was received on October 11, 2016, fewer than 29 days preceding the general election, and therefore, under Arizona law, he was not registered to vote in time for the 2016 general election. A.R.S. § 16-120; *Board of Supervisors*, 446 P.2d at 233, 103 Ariz. at 504.

In its 2016 ruling, the District Court stated that the Court "need not determine whether the Secretary was required to extend the deadline here pursuant to § 1-303" because the NVRA preempted any other result anyway. *See ADP*, 2016 WL 6523427, at *16. Elsewhere, the 2016 District Court seemed to indicate that the Secretary erred in not changing the deadline pursuant to state law, and pointed to A.R.S. § 16-134(C) in support.[2] This statute reads:

> In the case of registration by mail, a voter registration is valid for an election if it complies with either of the following:
>
> 1. The form is postmarked twenty-nine days or more before an election and is received by the county recorder by 7:00 p.m. on the day of that election.
>
> 2. The registration is dated twenty-nine days or more before an election and is received by the county recorder by first class mail within five days after the last day to register to vote in that election.

By its clear wording, A.R.S. § 16-134 simply represents a specific application of the law on voter registration that applies <u>only</u> in the case of voter registration by mail. One thing everyone here agrees on is that Mr. Isabel did not register via mail.

---

[2] *ADP*, 2016 WL 6523427, at *15.

This statute has no application and does not alter the holding in *Board of Supervisors*. 446 P.2d at 233, 103 Ariz. at 504.

      b.    <u>Mr. Isabel's claim that setting the deadline on October 10, 2016 also lacks merit</u>

The Plaintiff claims that the Secretary violated federal law as well, to wit, the NVRA. The 2016 District Court agreed on this point, stating that "[t]he NVRA directs that eligible voters who register in-person at the MVD…should be permitted to vote in that election…the deadline set by the state's designated chief elections official here shortened the period expressly prescribed under Section…[and] violated Section 8 of the NVRA." *ADP*, 2016 WL 6523427, * 13.

On this point, the 2016 District Court erred—even if this Court presumes that the NVRA, with its 30 day default maximum minimum time period, controls in these circumstances, it is clear from a simple review of the plain language of the NVRA that the 2016 District Court erred in its conclusion on this point.

The relevant part of the NVRA on this point is 52 U.S.C § 20507(a), and it provides that "each State shall…ensure that any eligible applicant is registered to vote in an election…in the case of registration with a motor vehicle application under section 20504 of this title, if the valid voter registration form of the applicant is submitted to the appropriate State motor vehicle authority not later than the lesser of 30 days, or the period provided by State law, before the date of the election."

Mr. Isabel did not submit his form at least 30 days, or even 29 days, prior to

the election, and falls out of the plain language of the NVRA on this point. The language of NVRA itself does not support the proposition that state offices must remain open on weekends and holidays in order to accommodate voter registrations, or that the deadline itself must be changed to accommodate these contingencies. Mr. Isabel simply did not submit the form on time, and therefore was not registered on time. Nothing else really matters as far as the statutory language goes. *See, e.g., Hardt v. Reliance Standard Life Ins. Co*., 560 U.S. 242, 251 (2010)("We must enforce plain and unambiguous statutory language according to its terms."). But it should also be noted that Service Arizona, MVD's online registration system, was open on October 10 and "[v]oter registration applications were received online via Service Arizona." *ADP*, 2016 WL 6523427, *3. Whatever obligations were imposed on the state via NVRA, the state met them.

The 2016 District Court relied on the theory that the actions of the Secretary, in not moving the deadline, effectively created a longer deadline than permitted by the NVRA of 32 days in the case of in person registration at the MVD: "[t]he voter registration deadline therefore did not ensure that any applicant who registered to vote 'not later' than 30 days before November 8, 2016 was eligible to vote in the general election." *ADP*, 2016 WL 6523427, at *13. This represents a subtle but important misreading of the NVRA. The NVRA actually states that the respective state shall ensure that the registration is timely only "if the valid voter registration

form of the applicant is submitted to the appropriate State motor vehicle authority…30 days…before the date of the election." 52 U.S.C. § 20507(a). Mr. Isabel did not do this. Under the plain language of the statute, there was no violation.

It is true that the 2019 District Court declined to address the question of whether the Secretary's actions were consistent with Arizona law. 2019 Westlaw 5684195 at *4. However, "[i]n reviewing decisions of the district court, we may affirm on any ground finding support in the record. If the decision below is correct, it must be affirmed, even if the district court relied on the wrong grounds or wrong reasoning." *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp*., 982 F.2d 363, 367 (9th Cir.1992) (*quoting Jackson v. Southern Cal. Gas Co*., 881 F.2d 638, 643 (9th Cir.1989)).

This Court is clearly free to affirm on this point, which presents a pure question of law.

> ## 2. Mr. Isabel's constitutional rights were not unduly burdened by the deadline, even if improperly imposed, and there is no right to sue for monetary damages in such an instance
>
> ### a. <u>Plaintiff's attempt to avoid existing, binding case law on voter registration deadlines and their relationship to constitutional rights is unavailing</u>

The theory that the deadline imposed by the Secretary created an unconstitutional burden on those registering to vote on October 11, 2016 was

rejected by the 2016 District Court. So the Plaintiff has attempted to retrofit what in substance is the same failed claim from 2016 by now asserting that the issue involves an alleged violation stemming out of the refusal to count Mr. Isabel's ballot. This Court should reject this semantical shell game—the issue is whether the deadline provided for in Arizona statutory law and imposed by the Secretary in 2016 infringed Mr. Isabel's constitutional rights. It was this deadline that led to Mr. Isabel's vote being deemed invalid. And as the 2016 District Court found, there was no constitutional infringement:

> The holiday deadline did not limit the methods of voter registration; it merely imposed a timeframe in which voters had to act in order to register to vote in the general election. Nor did the deadline impose restrictions in a disproportionate manner because only certain methods for voter registration were available on Columbus Day. The deadline did not prevent individuals from registering to vote in-person at the MVD or by postmarked mail; it merely required those wishing to do so during open operating business hours at some date and time prior to October 10, 2016. The voters at issue here could have registered in time for the general election, but unfortunately did not do so.

*ADP*, 2016 WL 6523427, at *9.

The 2016 District Court went on to find that "[t]he holiday deadline is also not so severe as itself to constitute an unconstitutionally onerous burden on the exercise of the right to vote…the Court finds that the holiday deadline, and the Secretary's decision not to extend it, imposed only 'a de minimis burden on constitutional rights.'" *Id.* at *10 (quotation omitted).

Registration deadlines, including the October 10, 2016 deadline, have long been held to be an important component of the administration of elections and consistent with

the Constitution. *See, e.g., Barilla v. Ervin*, 886 F.2d 1514, 1525 (9th Cir. 1989)(finding plaintiffs were not "absolutely disenfranchise[d]" by the challenged provision...They could have registered in time for the... election, but they failed to do so. What [was] at issue ... [was] not a 'ban' on the plaintiffs' right to vote, but rather, a 'time limitation' on when the plaintiffs had to act in order to be able to vote.")(overruled on other grounds by *Simpson v. Lear Astronics Corp.*, 77 F.3d 1170, 1174 (9th Cir.1996)).

The case of *Rosario v. Rockefeller* is also instructive. 410 U.S. 752 (1973). *Rosario* concerned a class action challenge to a New York law requiring those wanting to vote in a party's primary election to register with the party at least thirty days before the preceding general election. 410 U.S. at 753-54. The plaintiffs registered in December of 1971, thereby waiting until after the deadline to enroll with a political party, even though they could have done so before the deadline. *Id*. at 755. They were therefore ineligible to vote in the 1972 primary election, held in June of that year. *Id*. The plaintiffs filed suit for declaratory relief pursuant to 42 U.S.C. § 1983, alleging that through the registration statute, New York unconstitutionally disenfranchised them. *Id*. at 756.

The Supreme Court held that the challenged statute "did not absolutely disenfranchise the class to which the petitioners belong" but "merely imposed a time deadline on their enrollment, which they had to meet in order to participate in the next primary." *Id*. at 768. The Court concluded that "if their plight can be characterized as disenfranchisement at all, it was not caused by [the challenged deadline], but by their own failure to take timely steps to effect their enrollment." *Id*. at 758.

In deciding the matter, the Supreme Court also rejected the district court's opinion that the plaintiffs' failure to meet the deadline was involuntary because they lacked "sufficient awareness of the relevant circumstances and likely consequences." *Id*. at 758 n.7. Those types of arguments "could well be made any time a State imposes a time limitation or cutoff point for registration or enrollment." *Id*. The pivotal point was that the state did not prevent plaintiffs from enrolling in a party by the deadline; rather, the plaintiffs themselves chose not to do so. *Id*. at 757-58. This fact distinguishes the New York law from other laws that the Supreme Court has declared unconstitutional, because those laws "totally denied the electoral franchise to a particular class of residents[.]" *Id*. at 757. The New York law, in contrast, was not a ban—just a time limit. *Id*. at 758.

The deadline in *Rosario* was also far more onerous than any burden imposed by Arizona's 29 day deadline. Even though they had registered in December of 1971, the Plaintiffs in *Rosario* were not eligible to vote in an election held in June of 1972. *Id*. at 755.

Similarly, *Barilla v. Ervin* involved a challenge to Oregon's voter registration deadline. 886 F.2d at 1516. The plaintiffs asserted that the deadline unconstitutionally burdened their right to vote. *Id*. The district court ruled otherwise, and the plaintiffs appealed. *Id*. The Ninth Circuit began its analysis by noting that voter registration deadlines had been "repeatedly upheld, against similar challenges," by other courts. *Id*. at 1522. It affirmed the district court's decision, concluding that Oregon's deadline satisfied whatever level of scrutiny should be applied because it was necessary to the administration of elections. *Id*. at 1523-24.

However, the Ninth Circuit also explained that an alternative analysis required affirmance of the district court. *Id.* Relying on the Supreme Court's decision in *Rosario*, the court concluded that the plaintiffs "were all disenfranchised by their willful or negligent failure to register on time," not by Oregon's registration deadline. *Id.* at 1525. In other words, "[t]hey could have registered in time . . . but they failed to do so." *Id.* Accordingly, at issue was "not a 'ban' on the plaintiffs' right to vote, but rather, a 'time limitation' on when the plaintiffs had to act in order to be able to vote." *Id.* So, the registration deadline did not deny them the opportunity to vote and, therefore, did not disenfranchise them. *Id.* Critically, we have no allegations to the contrary—there is absolutely no allegation in Plaintiff's First Amended Complaint as to any impediment applicable to Mr. Isabel that would have prevented him from registering in a timely manner.

Again, Judge Logan addressed each aspect of this case and followed the precedent set by *Barilla* and *Rosario*. He concluded that the October 10 deadline did not disenfranchise voters who registered on October 11. *Reagan*, 2016 WL 6523427, at * 9. There is a "critical difference between regulations that categorically deny the right to vote and those which merely require an applicant to take some action to satisfy reasonable registration requirements." *Id.* Accordingly, the 2016 District court concluded that there was no disenfranchisement, and any burden on constitutional rights was *de minimus*. *Id.* at * 10, 12. Because the registration deadline served important state interests, the constitutional claims failed. *Id.* They still fail.

b.   The cases cited by the Plaintiff to support a
     Constitutional claim for monetary damages
     involve egregious factual situations not present
     here

The Plaintiff cites a series of cases for the proposition that federal courts have found that they have the legal authority to order state officials to pay monetary damages any time an individual's ballot should be counted but is not.  The reality is that the cases cited involve egregious and intentional violations of rights not present here.

The first such case cited, *Taylor v. Howe*, involved an award of damages in which the poll workers had discriminated against African-American voters on the basis of race in preventing them from casting a ballot at the 1996 election.  225 F.3d 993, 1004 (8th Cir. 2000).

*Wayne v. Venable* involved a situation in which the polls were not kept open for the hours required by state law.  Lines ensued, and then the poll workers essentially were picking and choosing who was entitled to vote.  260 F. 64, 65 (8th Cir. 1919).

*Nixon v. Herndon* involved a Texas statute which prohibited African-Americans from voting in the primary election. 273 U.S. 536, 539–40 (1927).

In the case of *Wiley v. Sinkler*, the Supreme Court affirmed a dismissal of a civil cause of action based on a claim that the person seeking to vote had his vote improperly rejected.  179 U.S. 58, 66 (1900).  But the Supreme Court simply

dismissed the matter because the complaint "contain[ed] no allegation that he was ever registered as such. Because of this omission the complaint does not state facts sufficient to constitute a cause of action." *Id*. The Supreme Court never reviewed the merits of that issue.

As he did below, the Plaintiff relies heavily on a criminal case, *United States. v. Classic*, 313 U.S. 299, 308 (1941). As the District Court noted, *Classic* does make certain references that, if "read in isolation, can be construed as suggesting that a federal constitutional violation occurs whenever a state election official fails to count a ballot cast by a qualified voter." *Isabel*, 2019 WL 5684195, at *5. However, *Classic* involved individuals who were qualified to vote under state law who had their ballots "willfully altered and falsely counted" by corrupt local Louisiana election officials, and "[t]he overt acts alleged were that the [officials] altered eighty-three ballots cast for one candidate and fourteen cast for another, marking and counting them as votes for a third candidate, and that they falsely certified the number of votes cast for the respective candidates to the chairman of the Second Congressional District Committee." *Id.* at 308.

The Supreme Court concluded that these corrupt officials could be prosecuted for violating federal criminal law. *Id.* at 325-26. As the District Court found, *Classic* simply does not go beyond the criminal matter that was the issue before that Court, and does not provide a cause of action for monetary damages in the present

circumstances.

It is in this vein of trying to make the cases cited above "fit" where the Plaintiff claims that unless monetary damages are awarded, the Court "would green-light the very kind of bad-faith 'counting' performed by Defendants here." (Answering Brief, p. 12). This assertion is ridiculous—there was no bad faith, and the District Court's ruling is limited to the particular facts of the case, which, because of the statutory change, will not occur again. And it was not just the 2019 District Court—the 2016 District Court declined to order the Defendants to count the contested ballots in 2016. Even if one disagrees, it does not follow that the position embraced by the Secretary, which is well supported in law, was a product of bad faith.

The Plaintiff claims he is not demanding an error free election, but that is his true cause of action. He has not shown any actual violations of law to start with. But even if he had, his cause of action essentially relies on a theory that he has a federal right to an error free election.

### B. MR. ISABEL IS PRECLUDED FROM USING THE NVRA, AND ITS REQUIREMENTS, AS THE BASIS FOR AN AWARD OF MONEY DAMAGES

#### 1. Money damages are not available Under the NVRA or any other theory of Mr. Isabel's

It is clear that the Plaintiff is attempting to shift in and out of theories that would support his attempts to secure monetary damages to be paid by state officials. The Plaintiff attempts to cobble together a federal claim by invoking general

constitutional provisions on rights together with the specific (but flawed) application of the NVRA that he argues for. But the bottom line is that monetary damages simply are not available under the facts and law here.

Although the NVRA provides a private right of action, Plaintiff seeks to enforce it via 42 U.S.C. § 1983 because the private right of action afforded by the NVRA does not include monetary damages. Section 1983 broadly provides a remedy for violations of federal statutes. *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980). However, the remedy is just that—a remedy. Section 1983 does not confer any individual rights; it merely provides a mechanism for enforcement of individual rights found in the U.S. Constitution and federal statutes. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002). Accordingly, the Supreme Court has "reject[ed] the notion that our cases permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983." *Id.* at 283.

As a further limit on the reach of § 1983 to vindicate federal statutory rights, case law "teaches that when Congress creates a right by enacting a statute but at the same time limits enforcement of that right through a specific remedial scheme that is narrower than § 1983 , a § 1983 remedy is precluded." *Stilwell v. City of Williams*, 831 F.3d 1234, 1244 (9th Cir. 2016); *see also Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 15 (1981) ("[T]he existence of these express remedies demonstrates . . . that [Congress] intended to supplant any remedy that otherwise would be available under § 1983."). "[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading

others into it. When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode." *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 19-20 (1979). That would apply to a statute, such as NVRA, which outlines a specific remedial scheme providing only declaratory and injunctive relief to aggrieved parties.

To secure its enforcement, NVRA provides a private right of action in 52 U.S.C. § 20510(b). This section states that a person who is aggrieved by a NVRA violation may provide written notice of the violation to the State's chief election official, in this case the Arizona Secretary of State.[4] 52 U.S.C. § 20510(b). Under 52 U.S.C. § 20510(b)(2), the State has a certain time period to correct the violation, after which the aggrieved person "… may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation."[5] Absent from the statute is any vehicle for retrospective claims, compensatory, or punitive damages for any adjudged violation. If Congress had intended that those remedies be available, in addition to the explicitly available remedies cited above, why would Congress not state that?

In the NVRA, Congress seemed to create an "enforceable right." However, Congress also spoke through its designation of a specific process and remedy to address violations. The purpose of NVRA was to boost voter registration and turnout. 52 U.S.C. § 20501(b). Thus, Congress provided for remedies that would specifically advance that purpose—declaratory and injunctive relief. Moreover, Congress provided a detailed

mechanism for aggrieved parties to obtain that relief with notice requirements which are geared towards permitting the State to cure any violation prior to the election. 52 U.S.C. § 20510(b)(2). This is the obvious remedy as it functions to preserve a wrongfully aggrieved party's opportunity to vote. *See Id.* Allowing individuals to achieve monetary awards years after the election simply is not part of the intended purpose.

Deriving congressional intent here need not be an exercise solely in speculation. The statutory language is clear enough, but in this case, the legislative history of NVRA provides additional insight into the intent of Congress in passing the statute with the designated private right of action. The Committee on House Administration commented on concerns regarding monetary damages:

> The Committee has heard concerns that this section authorizes the award of monetary damages. It does not. Corrective action in the form of declaratory and injunctive relief, plus reasonable attorney fees are the available civil remedies.

H.R. Rep. No. 103-9, at 20 (1993). The Senate Committee on Rules and Administration held similar discussions:

> It should be noted that this section does not authorize the award of monetary damages. Rather, the civil remedies that are authorized are corrective action in the form of declaratory and injunctive relief, plus reasonable attorney fees.

S. Rep. No. 103-6, at 36-37 (1993).

"In the absence of strong indicia of a contrary congressional intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate." *Middlesex Cty. Sewerage Auth.*, 453 U.S. at 15. Indeed, Congress did so

when it passed NVRA. According to the plain language of the statute and the corresponding legislative history, the available remedies do not include compensatory and punitive damages either in an action directly under the statue or through § 1983.[6]

The Plaintiff also attempts to rely on the NVRA's savings clause. This provision, 52 U.S.C. § 20510(d), titled "[r]elation to other laws, states:

> The rights and remedies established by this section are in addition to all other rights and remedies provided by law, and neither the rights and remedies established by this section nor any other provision of this chapter shall supersede, restrict, or limit the application of the Voting Rights Act of 1965.

This provision is nothing but commonplace savings clause, and by its clear wording, it applies to rights and remedies that are already "provided by law." Mr. Isabel's attempt to use this to create wholly new rights and remedies that are unsupported by the text of the NVRA is unavailing. NVRA provides its own rights and remedies, which are exclusive and do not include monetary damages. There can be no question on this point, and to the extent any remains it was settled by Congress in reports of both the Senate and House of Representatives, quoted above.

In addition, though Mr. Isabel argued the Help America Vote Act's Savings Clause below, this argument regarding the NVRA Savings Clause makes its first appearance on appeal. This argument has been waived. *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999)("As a general rule, we will not consider arguments that

are raised for the first time on appeal.")

As a final note on this section, Plaintiff's attempt to use general constitutional provisions to revive his monetary damages claim was covered by Defendant above, in section II(A)(2).

### 2. The so-called "sore loser" cases are not directly on point but are nonetheless instructive as to how federal courts apply the law

The Plaintiff erroneously contends that the District Court improperly equated Plaintiff's voting rights claims with the sore-loser claims seen in *Powell v. Power* and *Hutchinson v. Miller*. 436 F.2d 84 (2nd Cir. 1970), 797 F.2d 1279 (4th Cir. 1986). What the district court did was simply point out that the Plaintiff's assertions involved a claim that went beyond a simple "innocent" mistake by elections officials. Isabel, 2019 WL 5684195, * 6. And the Court went on to discuss the import of both *Powell* and *Hutchinson* with regard to this point.

A fair reading of *Powell* supports the District Court's reasoning that in *Powell*, "the Second Circuit seemed to suggest that liability would arise only in the case of 'purposeful tampering' with ballots." 436 F.2d at 88 ("while article 1, section 2 may outlaw purposeful tampering by state officials with the conduct of a primary election for a Congressional seat, *Classic*, 313 U.S. at 299, we cannot believe that the framers of our Constitution were so hypersensitive to ordinary human frailties as to lay down

an unrealistic requirement that elections be free of any error.")

The District Court was also correct in noting that *Hutchinson* involved allegations of intentional conduct, but the Court still would not allow the claim to proceed. The Plaintiff attempts to dismiss *Hutchinson* as inapplicable because *Hutchinson* dealt with a claim by losing candidates. But the *Hutchinson* Court also noted that the district court found that the claim was not tenable for another reason: "finding only 'mere election irregularities' and no evidence to suggest that the election was fundamentally unfair, the court held that plaintiffs had failed to prove a deprivation of a constitutional right essential to a § 1983 action." *Hutchinson*, 797 F.2d at 1282. The same is true here, as found by Judge Logan and was noted above—even if the Secretary was wrong on the law, this error did not rise to the level of a constitutional infringement. *ADP*, 2016 WL 6523427, at *10 (stating that "the holiday deadline, and the Secretary's decision not to extend it, imposed only "a de minimis burden on constitutional rights.")

The 2019 District Court's overall point in quoting *Powell* and *Hutchinson* was that even though Plaintiff's allegations go beyond an assertion of an innocent mistake, they nonetheless are not cognizable. And then the District Court noted that the Plaintiff would not have met that standard anyway. And all this cuts against his claim of the broad constitutional right to monetary redress every time a state or local

election official errs.

The District Court's ruling never stated that *Powell* and *Hutchinson* were directly on point, but nonetheless they have application, as noted by the District Court. *Powell* does indicate that, regardless of who was asserting the claim, the defeated candidate or perhaps a voter, intentional tampering would support a cause of action. 436 F.2d at 88. *Hutchinson* indicates that fundamental unfairness is necessary. 797 F.2d at 1282. The facts here simply do not rise to the level of the actions that other federal courts have stated are necessary to support a claim for monetary damages.

As to *Classic*, that case does not compel a conclusion that monetary damages and a federal cause of action is available any time a person's vote was not counted, regardless of the particular circumstances. If it did, one would expect a rich body of case law embodying this point. Instead, there is a dearth of such case law, as the District Court noted. The Plaintiff badly mischaracterizes the District Court's ruling on this point.

## C.     THE DISTRICT COURT PROPERLY CHARACTERIZED THE *ADP* OPINION

The Plaintiff here attempts to use semantics to essentially reinvent what the District Court said in its 2016 ruling. One may not know it from Plaintiff's description, but the 2016 District Court denied the request for an order that ballots

cast by individuals registering to vote on October 11, 2016 be counted by election officials.

In order to avoid any confusion, the Secretary recounts certain parts of the 2016 ruling from that actual ruling here.

As a starting point, the 2016 Court denied the request for the order requested by the Plaintiffs in part because "polling lists have been disseminated, early ballots have been cast, and polls open in a matter of days". The Court also found that requiring such a change, that the votes be counted, at the final hour would risk "endangering the exercise of that right [to vote] by others." *ADP*, 2016 WL 6523427, *4, *18.

In a portion of its ruling that went to the merits, the 2016 District Court flatly rejected the Plaintiffs' assertion that "the Secretary's refusal to extend the October 10, 2016 voter registration holiday deadline impermissibly burdened constitutional rights," and found that the Secretary's decision to "adher[e] to the voter registration deadline served (and serves) the State's important interests in protecting the integrity and reliability of the electoral process itself…[and] if the State had extended the voter registration deadline last minute in the days leading up to October 10th, or retroactively set an October 11th voter registration deadline now, [there would be] a realistic possibility that the public's confidence in the state's ability to competently administer elections and protect against disorder would be undermined and dissuade

them from going to the ballot box next week." Finally, the Court found that "the Secretary has demonstrated that the decision not to extend the voter registration deadline in the weeks shortly before the deadline served (and serves) the State's important interests in the orderly, accurate, and reliable administration of elections....[t]he Secretary's decision not to extend the deadline in the final hours was a reasonable, non-discriminatory restriction that advanced an important state interest in administering a fair and orderly election...the [plaintiffs'] constitutional claim fails on the merits...."

The 2016 District Court also recounted the various tasks that elections officials must perform in the compressed 29 day timeframe between the deadline and the general election:

> The undisputed evidence shows that the voter registration deadline is only one step in a series of orchestrated events that must take place before the election, and officials must strategically undertake a multitude of critical tasks imposed by law. For example, officials have only a brief window to transition from only receiving and processing voter registration to also receiving and processing early ballots and ballot requests. The twenty-nine day registration deadline only proceeds the early voting period by two days, which is statutorily set to begin twenty-seven days before election day. *See* Ariz. Rev. Stat § 16-542(C). When registered voters request an early ballot within twenty-seven days of the election, county recorders must mail the ballot within forty-eight hours of the request. Ariz. Rev. Stat. § 16-542(D). By the time of the hearing which took place approximately a week after the voter registration deadline, Maricopa County reported that they had received 1.5 million early ballot request forms. (Doc. 30, Hr'g Tr. 109:13-14.) By the tenth day preceding the election, officials must prepare and transmit voter registration poll lists. *See* Ariz. Rev. Stat. §

16-168(A).

*ADP*, 2016 WL 6523427, at *11.

Notwithstanding Plaintiff's claims that the Secretary acted "with evil motive or intent", the 2016 District Court's ruling shows that the evidence did not support such a proposition. And the 2019 District Court pointed out that the Plaintiffs pled nothing of substance to support this assertion. The findings of both District Courts were correct.

This leads to another point and that is how the Plaintiff so easily dismisses the course of action taken by the Defendants in not moving the deadline even after the 2016 federal lawsuit failed. Plaintiff makes it sound as if the Defendants had the unfettered ability to take into account situations such as Mr. Isabel's and decide that it justified a departure from the apparent legal requirements. The reality is quite different, as noted in the 2016 ruling.

A.R.S. § 16-120 imposes a required minimum time period between registration and the general election for an elector to meet in order to vote in that general election. As Judge Logan explained in detail, that time period exists for a reason, and that reason is clearly not to unnecessarily prevent individuals from voting. Arizona Supreme Court precedent binding at that time did not provide for that timeline to be adjusted because it was a statutorily required minimum time period, and adjusting the time period as the plaintiffs in the 2016 case desired would

have resulted in that minimum time period not being met. *Board of Supervisors*, 446 P.2d at 233, 103 Ariz. at 504.

At the same time, the federal NVRA's plain language did not appear to be implicated, as stated above. The plain language of NVRA does prohibit a state from disallowing an individual's general election ballot if the individual had turned in their registration at least 30 days prior. However, the plain language does not support the proposition that a state office must remain open so that an individual may always register at that office on the thirtieth day preceding the election. Presumably it was known to Congress when they passed NVRA that state motor vehicle offices are typically closed on weekends and holidays, and Congress made no provision to adjust the 30 day time period. *Hardt*, 560 U.S. at 251.

The Plaintiff here accuses the District Court of misstating the 2016 decision. The Plaintiff claims that "[d]efendants willfully ignored the ruling in the ADP Opinion when they made the determination not to count Mr. Isabel's provisional ballot." (Answering Brief, p. 19). The reality it is the Plaintiff, not the District court that is distorting the 2016 ruling.

Contrary to the implication in Plaintiff's brief, the 2016 District Court did not suggest that even though the Court would not order it, the Defendants should simply count these voters on their own. Quite the contrary, the Court noted the non-advisability of making these types of 11th hour, last minute changes: "if the State had

extended the voter registration deadline last minute in the days leading up to October 10th, or retroactively set an October 11th voter registration deadline now, it poses a realistic possibility that the public's confidence in the state's ability to competently administer elections and protect against disorder would be undermined and dissuade them from going to the ballot box next week." *ADP*, 2016 WL 6523427, at *10.

Lastly, the Plaintiff's claim that the 2019 District Court adopted a theory that because a ballot was deemed invalid, it is invalid. This is another distortion—the deadline had been set in February of 2016. ADP, 2016 WL 6523427, at *1. And the cases cited on this specific point are inapposite. *Lawrence* involves an ordinance which the Plaintiff himself cites as "clearly unconstitutional." *Lawrence v. Reed*, 406 F.3d 1224 (10th Cir. 2005). In contrast, the application of the deadline here was clearly not unconstitutional. *ADP*, 2016 WL 6523427, at *10 ("the Secretary's decision not to extend it, imposed only a de minimis burden on constitutional rights")(quotations omitted).

*United States v. Robeles-Ortega* is a criminal case that has no discernible application to this case. 348 F.3d 679 (7th Cir. 2003).

The District Court properly characterized the 2016 ruling, which clearly did not leave any kind of impression that the Defendants should simply count the

disputed ballots on their own.

### D. THE DISTRICT COURT DID NOT IMPOSE A HEIGHTENED PLEADING STANDARD.

The Plaintiffs also erroneously contend that the District Court imposed a "heightened pleading requirement." Plaintiff's argument here starts by misstating what the District Court actually did. Plaintiff claims that "the District Court dismissed Mr. Isabel's § 1983 claim because 'the FAC doesn't plausibly allege that Defendants acted with a culpable mental mindset." (Opening Brief, p. 22). As stated above, the District Court was simply reviewing what other Court had stated with regard to asserting claims similar to the ones made by Plaintiff.

The Plaintiff goes on to claim that even though a heightened pleading standard cannot be required, the Plaintiff here meets this standard. Oddly, to prove the requisite mental state of election officials in 2016 in not counting Mr. Isabel's ballot, the Plaintiff points to the Arizona Elections Procedures Manual adopted in 2018. (Opening Brief, p. 23). The District Court properly noted the changes made two years later "do not plausibly show that Defendants acted with a culpable mindset during the 2016 election cycle." 2019 WL 5684195, at * 8.

In order to remain accurate *vis a vis* Arizona law, the Elections Procedures Manual had to be changed on this point to reflect Chapter 262, passed by the Arizona

Legislature in the 2017 regular session.  Chapter 262 added subsection B to A.R.S. § 16-120 as follows:

> If the twenty-ninth day preceding the date of the election falls on a Saturday, Sunday or other legal holiday, voter registrations that are received on the next business day immediately following the Saturday, Sunday or other legal holiday are deemed to have been timely received for purposes of voting in that election.

The change to the Manual that Plaintiff points to as evidence of a "culpable mental state" merely reflected, accurately, a change in state law.  There is the additional point that, even as quoted by the Plaintiff, the Manual stated that under the order from Judge Logan, the Secretary of State had authority to move the deadline to comply with NVRA.  This was a moot point after the passage of Chapter 262 anyway, but prior to this order from Judge Logan, the Secretary clearly indicated that she did not think she had such legal authority. *ADP*, 2016 WL 6523427, at *15. To demonstrate the way Plaintiff turns this point on its head, Plaintiff effectively claims it is "bad faith" for the Secretary not to do something that she indicated she felt she had no lawful authority to do, where the 2016 District Court declined to order her to do this as well.  This is not bad faith or evidence of a culpable mental state.

The Plaintiff also conflates the power to move the deadline months ahead of time with the authority to disregard a deadline many months after it had been set and weeks after the deadline had passed, with an election fast approaching.  Judge Logan

noted the problems inherent in making last minute changes in the realm of elections. *ADP*, 2016 WL 6523427, at *11.

The Plaintiff's attempt to point to the 2018 Elections Manual to support its contention of a certain culpable mental state clearly fails to stand up in the face of logical scrutiny.

## III. VIOLATIONS OF THE NVRA ARE NOT SUBJECT TO MONETARY DAMAGES

### A. THE NVRA'S STATED REMEDIES ARE CLEAR AND PRECLUDE MONETARY RELIEF

This argument was addressed in Section II(A)(2) above.

### B. THE NVRA DOES NOT HAVE A BEARING ON CONSTITUTIONAL CLAIMS

This issue has not actually come up in this matter. It is a little unclear why it was briefed, but the Secretary agrees with the proposition that were there viable monetary claims made based on the U.S. Constitution, the NVRA would not foreclose them.

The NVRA is somewhat of a creature unto itself. It contains a number of provisions regarding registering voters and administering elections, but it contains its own enforcement scheme. And just as this scheme is the exclusive remedy for NVRA violations, it does not appear to have a bearing on other remedies that stem from completely separate statutes or constitutional provisions. The Savings Clause

confirms that the NVRA is not intended to be in derogation of existing rights and remedies, but it does not provide additional substantive rights, as the Plaintiff claims.

## IV. CONCLUSION

For the foregoing reasons, this Court should affirm the District Court's decision.

RESPECTFULLY SUBMITTED this 3rd day of June, 2020.

**TIMOTHY A. LA SOTA, PLC**

BY: /s/ TIMOTHY A. LA SOTA
Timothy A. La Sota
2198 East Camelback Road, 3rd Floor
Phoenix, AZ 85016
***Attorney for* Amicus Curiae *Arizona Free Enterprise Club***

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel for Defendant-Appellee Michele Reagan, certifies that this brief complies with the length limits permitted by Ninth Circuit Rule 32-1(a). The brief contains 8,135 words, excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

DATED: June 3, 2020.

**TIMOTHY A. LA SOTA, PLC**


<u>/s/ Timothy A. La Sota</u>
Timothy A. La Sota

## STATEMENT REGARDING RELATED CASES

Pursuant to Circuit Rule 28-2.6, Plaintiff-Appellant is not aware of any other related cases.

DATED: June 3, 2020.

**TIMOTHY A. LA SOTA, PLC**


/s/ Timothy A. La Sota
Timothy A. La Sota

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the

Court for the United States Court of Appeals for the Ninth Circuit by using the

appellate CM/ECF system on June 6, 2020 for filing and transmittal of a Notice of

Electronic Filing:


DATED: June 3, 2020.

**TIMOTHY A. LA SOTA, PLC**


/s/ Timothy A. La Sota
Timothy A. La Sota
