No. 19-17397

# IN THE UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

DAVID ISABEL, individually and on
behalf of all others similarly situated,

        Plaintiff-Appellant,

v.

MICHELE REAGAN, in her
individual capacity, et al.,

        Defendants-Appellees.

D.C. No. 2:18-CV-03217-DWL

---

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA
_____

## APPELLEES MARICOPA COUNTY AND MARICOPA COUNTY
## RECORDER ADRIAN FONTES' ANSWERING BRIEF

ALLISTER ADEL
MARICOPA COUNTY ATTORNEY

Joseph La Rue
Joseph J. Branco
Talia Offord
Deputy County Attorneys

CIVIL SERVICES DIVISION
222 North Central Avenue, Suite 1100
Phoenix, Arizona 85004-0496
ca-civilmailbox@mcao.maricopa.gov
*Attorneys for Defendants-Appellees*
*Maricopa County and Maricopa County*
*Recorder Adrian Fontes*

# Table of Contents

Table of Contents ........................................................................................ i

Table of Authorities .................................................................................. iii

Introduction ................................................................................................1

Statement of Jurisdiction............................................................................2

Statement of the Issues................................................................................3

Statement of Pertinent Statutory and Constitutional Provisions ...............4

Statement of the Case..................................................................................7

   I.  Isabel filed the original complaint, and the district court dismissed it...........7

   II. Isabel amended the complaint, and the district court dismissed it. ................9

Summary of the Argument.........................................................................10

Standard of Review ...................................................................................10

Argument....................................................................................................11

   I.  The district court properly dismissed Isabel's NVRA claim. .......................11

      A. The district court properly dismissed Isabel's NVRA claim because Congress intended for plaintiffs to bring NVRA claims under the NVRA not § 1983. ............................................................................................11

      B. Isabel's argument on appeal misreads § 20510(d). ..................................15

   II. The district court properly dismissed Isabel's HAVA claim. .......................19

      A. Isabel waived his HAVA claim..................................................................19

      B. Isabel's HAVA claim fails even if considered on the merits...................19

   III.The district court properly dismissed Isabel's constitutional claim.............22

      A. Isabel fails to state a claim alleging a violation of "the right to vote" .....22

    B. The County Defendants did not cause Isabel to miss the voter registration deadline..................................................................................................28

Conclusion ............................................................................................................33

Statement of Related Cases.................................................................................34

Certificate of Compliance ...................................................................................35

# Table of Authorities

## Cases

*Am. Civ. Rights Union v. Phila. City Commissioners*,
   872 F.3d 175 (3d Cir. 2017)..............................................................20

*Ariz. Democratic Party v. Reagan*,
   No. CV-16-03618-PHX-SPL,
   2016 WL 6523427 (D. Ariz. Nov. 3, 2016).......................... 25, 31, 32

*Assoc. of Cmty. Orgs. for Reform Now v. Fowler*,
   178 F.3d 350 (5th Cir. 1999)..............................................................11

*Assoc. of Cmty. Orgs. for Reform Now v. Miller*,
   912 F. Supp. 976 (W.D. Mich. 1995)..................................................12

*Balisteri v. Pacifica Police Dep't*,
   901 F.2d 696 (9th Cir. 1988)..............................................................10

*Barilla v. Ervin*,
   886 F.2d 1514 (9th Cir. 1989)....................................................... 30, 31

*Bragdon v. Abbott*,
   524 U.S. 624 (1998) ...........................................................................16

*Burdick v. Takushi*,
   504 U.S. 428 (1992) ..................................................................... 26, 27

*Cannon v. Univ. of Chicago*,
   441 U.S. 677 (1979) ...........................................................................16

*Cervantes v. Countrywide Home Loans, Inc.*,
   656 F.3d 1034 (9th Cir. 2011)............................................................11

*City of Emeryville v. Robinson*,
   621 F.3d 1251 (9th Cir. 2010)............................................................19

*City of Milwaukee v. Illinois & Michigan*,
   451 U.S. 304 (1981) ...........................................................................23

*City of Rancho Palos Verdes, Cal. v. Abrams*,
   544 U.S. 113 (2005) .................................................................. *passim*

*Cnty. of Sacramento v. Lewis*,
   523 U.S. 833 (1998) ...........................................................................24

*Condon v. Reno*,
   913 F. Supp. 946 (D.S.C. 1995).........................................................12

*Crawford v. Marion Cnty. Election Bd.*,
  553 U.S. 181 (2008) ..................................................................... 26, 27

*Ex Parte Young*,
  209 U.S. 123 (1908) .......................................................................17

*Harper v. City of L.A.*,
  533 F.3d 1010 (9th Cir. 2008)................................................................29

*Herman & MacLean v. Huddleston*,
  459 U.S. 375 (1983) ........................................................... 15, 17, 18

*Hutchinson v. Miller*,
  797 F.2d 1279 (4th Cir. 1986)..............................................................28

*Middlesex Cnty. Sewerage Authority v. Nat'l Sea Clammers Ass'n*,
  453 U.S. 1 (1981) ................................................................... *passim*

*Miranda B. v. Kitzhaber*,
  328 F.3d 1181 (9th Cir. 2003)........................................................ 16, 17

*Monell v. Dep't of Soc. Servs. of City of N.Y.*,
  436 U.S. 658 (1978) ......................................................................29

*Nat'l Coal. of Students with Disabilities Educ. & Legal Def. Fund v. Allen*,
  152 F.3d 283 (4th Cir. 1998)..............................................................12

*Nat'l Coal. of Students with Disabilities Educ. & Legal Def. Fund v. Allen*,
  961 F. Supp. 129 (E.D. Va. 1997)......................................................12

*Nat'l Council of La Raza v. Cegavske*,
  800 F.3d 1032 (9th Cir. 2015)............................................................13

*Nixon v. Herndon*,
  273 U.S. 536 (1927) ......................................................................25

*Powell v. Power*,
  436 F.2d 84 (2d Cir. 1970)........................................................ 27, 28

*Rosario v. Rockefeller*,
  410 U.S. 752 (1973) ................................................................ 30, 31

*Roy v. Lampert*,
  465 F.3d 964 (9th Cir. 2006)..............................................................12

*Sandusky Cnty. Democratic Party v. Blackwell*,
  387 F.3d 565 (6th Cir. 2004)..............................................................21

*Seminole Tribe of Fla. v. Florida*,
  517 U.S. 44 (1997) ......................................................................17

*Shah v. Cnty. of L.A.*,
    797 F.2d 743 (9th Cir. 1986) .......................................................... 7, 10

*Simpson v. Lear Astronics Corp.*,
    77 F.3d 1170 (9th Cir. 1996) ................................................................30

*Smith v. Robinson*,
    468 U.S. 992 (1984) ........................................................... 12, 14, 17

*Soules v. Kauaians for Nukolii Campaign Comm.*,
    849 F.2d 1176 (9th Cir. 1988) ................................................... 26, 28

*Storer v. Brown*,
    415 U.S. 724 (1974) ...............................................................................26

*Tashjian v. Republican Party of Conn.*,
    479 U.S. 208 (1986) ...............................................................................25

*Taylor v. Howe*,
    225 F.3d 993 (8th Cir. 2000) ...............................................................25

*United States v. Classic*,
    313 U.S. 299 (1941) ...............................................................................24

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) ......................................................... 7, 11

*United States v. Wells*,
    519 U.S. 482 (1997) ...............................................................................16

*Van Buskirk Studios, Inc. v. Cable News Network, Inc.*,
    284 F.3d 977 (9th Cir. 2002) ...............................................................11

*Wayne v. Venable*,
    260 F. 64 (8th Cir. 1919) ............................................................ 23, 24

**Constitutional Provision**

U.S. Const. amend. XIV ...............................................................................25

U.S. Const. amend. XV ...............................................................................25

U.S. Const. art. I, § 2 .................................................................... *passim*

U.S. Const. art. I, § 4 ...................................................................... 6, 26, 27

**Statutes**

15 U.S.C. § 78bb(a)(2) ...............................................................................18

28 U.S.C. § 1291 .........................................................................................2

28 U.S.C. § 1331 ..........................................................................2

28 U.S.C. § 1391 ..........................................................................2

33 U.S.C. § 1365(e) ....................................................................18

42 U.S.C. § 1971 ........................................................................25

42 U.S.C. § 1973 ........................................................................25

42 U.S.C. § 1983 ................................................................. *passim*

42 U.S.C. § 1988 ........................................................................32

52 U.S.C. § 20501 ..................................................................1, 8

52 U.S.C. § 20507 ......................................................... 4, 11, 12

52 U.S.C. § 20510(a) ................................................................13

52 U.S.C. § 20510(b) ........................................................ *passim*

52 U.S.C. § 20510(d) ....................................................5, 15, 17, 18

52 U.S.C. § 21081 ..................................................................1, 8

52 U.S.C. § 21082 ................................................................ 6, 19

52 U.S.C. § 21082(a) ........................................................... 3, 24

52 U.S.C. § 21084 ........................................................ 6, 19, 21

52 U.S.C. § 21111 ......................................................................20

52 U.S.C. § 21112 ......................................................................20

Ariz. Rev. Stat. § 11-413 ..........................................................28

Ariz. Rev. Stat. § 16-120(A) .....................................................29

**Legislation**

Americans with Disabilities Act of 1990.................................. 16, 17

Help America Vote Act of 2002 ................................... *passim*

National Voter Registration Act of 1993 ..................... *passim*

Rehabilitation Act of 1973.......................................... 16, 17

Telecommunications Act of 1996 ...............................................17

Title IX of the Education Amendments Act of 1972............................16

Title VI of the Civil Rights Act of 1964 ...................... 16, 17

**Rules**

9th Cir. R. 28-2.6 ................................................................................34

Fed. R. App. P. 32 ..............................................................................35

Fed. R. App. P. 4 ..................................................................................2

Fed. R. Civ. P. 12(b)(6) .....................................................................10

**Legislative History**

H.R. Rep. No. 103-9 (1993) ...............................................................15

S. Rep. No. 103-6 (1993) ...................................................................15

**Introduction**

Plaintiff-Appellant David Isabel tried to take his claims under (1) the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20501 *et seq.*, (2) the Help America Vote Act of 2002 ("HAVA"), 52 U.S.C. § 21081 *et seq.*, and (3) the United States Constitution's "Qualifications Clause," Art. I, § 2, or more broadly "the right to vote" under Supreme Court jurisprudence, and shoehorn them into a 42 U.S.C. § 1983 action for damages. His attempt failed as a matter of law, and the district court properly dismissed this action.

Isabel failed to state a claim to enforce the NVRA through a § 1983 damages suit because the text, structure, and history of the NVRA show that Congress intended for plaintiffs to bring NVRA claims under the NVRA's remedial scheme— not under § 1983. Similarly, the text, structure, and history of HAVA show that Congress did not intend for a private right of action seeking monetary damages under § 1983 to enforce HAVA. And Isabel failed to state a claim that the Defendants violated "the right to vote" as broadly expressed in Supreme Court jurisprudence because constitutional and statutory provisions provide that right, but Isabel could not properly allege violations of those specific provisions on the facts of this case.

This Court should affirm.

**Statement of Jurisdiction**

The district court had jurisdiction over Plaintiff David Isabel's putative civil rights action under 28 U.S.C. § 1331. Venue was proper in the District of Arizona, the location of all parties and the site of the alleged violations of federal law. *See* 28 U.S.C. § 1391(b).

Following dismissal for failure to state a claim, the judgment was entered on November 1, 2019. (Supplemental Excerpts of Record ("SER") 1). Pursuant to Federal Rule of Appellate Procedure 4(a), Isabel filed a timely notice of appeal on November 21, 2019. (Excerpts of Record ("ER") 1).

This Court has jurisdiction under 28 U.S.C. § 1291.

## Statement of the Issues

**1.** Under the NVRA, an aggrieved person "may bring a civil action . . . for declaratory or injunctive relief with respect to the violation." 52 U.S.C. § 20510(b). The NVRA's text, structure, and history show that an aggrieved person is not entitled to damages and that a § 1983 suit is not a proper vehicle for individual enforcement. Did the district court err when it dismissed Isabel's NVRA claim brought under § 1983?

**2.** Under § 302(a)(4) of the HAVA, a voter is entitled to have his provisional ballot "counted" only if a "State or local election official . . . determines that the individual is eligible under State law to vote." 52 U.S.C. § 21082(a)(4). According to the First Amended Complaint, the Arizona Secretary of State determined that Isabel was ineligible to vote and did not count his provisional ballot. Did the district court err when it dismissed Isabel's HAVA claim?

**3.** Isabel claims that the Defendants violated his "right to vote" as expressed in Supreme Court jurisprudence. At bottom, Isabel impermissibly seeks to rely on federal common law in order to avoid specific constitutional and statutory provisions that would doom his allegations. Did the district court err when it dismissed Isabel's "right to vote" claim?

**Statement of Pertinent Statutory and Constitutional Provisions**

**42 U.S.C. § 1983:**

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

**National Voter Registration Act of 1993**

**52 U.S.C. § 20507(a)(1):**

**(a) In general** In the administration of voter registration for elections for Federal office, each State shall-

(1) ensure that any eligible applicant is registered to vote in an election-

(A) in the case of registration with a motor vehicle application under section 20504 of this title, if the valid voter registration form of the applicant is submitted to the appropriate State motor vehicle authority not later than the lesser of 30 days, or the period provided by State law, before the date of the election;

(B) in the case of registration by mail under section 20505 of this title, if the valid voter registration form of the applicant is postmarked not later than the lesser of 30 days, or the period provided by State law, before the date of the election;

(C) in the case of registration at a voter registration agency, if the valid voter registration form of the applicant is accepted at the voter registration agency not later than the lesser of 30 days, or the period provided by State law, before the date of the election;

4

and

(D) in any other case, if the valid voter registration form of the applicant is received by the appropriate State election official not later than the lesser of 30 days, or the period provided by State law, before the date of the election;

**52 U.S.C. § 20510(b):**

**(b) Private right of action**

(1) A person who is aggrieved by a violation of this chapter may provide written notice of the violation to the chief election official of the State involved.

(2) If the violation is not corrected within 90 days after receipt of a notice under paragraph (1), or within 20 days after receipt of the notice if the violation occurred within 120 days before the date of an election for Federal office, the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation.

(3) If the violation occurred within 30 days before the date of an election for Federal office, the aggrieved person need not provide notice to the chief election official of the State under paragraph (1) before bringing a civil action under paragraph (2).

**52 U.S.C. § 20510(d)(1):**

**(d) Relation to other laws**

(1) The rights and remedies established by this section are in addition to all other rights and remedies provided by law, and neither the rights and remedies established by this section nor any other provision of this chapter shall supersede, restrict, or limit the application of the Voting Rights Act of 1965 (42 U.S.C. 1973 et seq.) [now 52 U.S.C. 10301 *et seq.*].

**Help America Vote Act of 2002**

**52 U.S.C. § 21082:**

**(a) Provisional voting requirements** If an individual declares that such individual is a registered voter in the jurisdiction in which the individual desires to vote and that the individual is eligible to vote in an election for Federal office, but the name of the individual does not appear on the official list of eligible voters for the polling place or an election official asserts that the individual is not eligible to vote, such individual shall be permitted to cast a provisional ballot as follows:

. . .

(4) If the appropriate State or local election official to whom the ballot or voter information is transmitted under paragraph (3) determines that the individual is eligible under State law to vote, the individual's provisional ballot shall be counted as a vote in that election in accordance with State law.

**52 U.S.C. § 21084:**

The requirements established by this subchapter are minimum requirements and nothing in this subchapter shall be construed to prevent a State from establishing election technology and administration requirements that are more strict than the requirements established under this subchapter so long as such State requirements are not inconsistent with the Federal requirements under this subchapter or any law described in section 21145 of this title.

**U.S. Const. art. I, § 2:**

The House of Representatives shall be composed of members chosen every second year by the people of the several states, and the electors in each state shall have the qualifications requisite for electors of the most numerous branch of the state legislature.

**U.S. Const. art. I, § 4**

The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof . . . .

## Statement of the Case[1]

### I. Isabel filed the original complaint, and the district court dismissed it.

In October 2018, Isabel filed the original complaint. (SER22). Isabel alleged that in 2016, Arizona's then-Secretary of State, Michele Reagan, established Monday, October 10, 2016 as the cut-off date for voter registration for the 2016 general election. (SER26). Isabel alleged that October 10, 2016, was a federal and state holiday; as a result, some methods of voter registration weren't available that day. (*Id.*). But because Maricopa County doesn't observe Columbus Day, County offices that accept voter registration applications were open on October 10, 2016. (*See* SER2–3).[2]

Isabel registered to vote on October 11, 2016, the day after the deadline. (SER27). In the 2016 general election, Isabel was allowed to vote by provisional ballot. (SER29). The Maricopa County Recorder's Office found that Isabel wasn't eligible to vote because he missed the deadline; as a result, it didn't count his vote. (*Id.*).

Isabel's original complaint under 42 U.S.C. § 1983 claimed three violations

---

[1]    At this stage, this Brief must assume the truth of well-pled allegations. *See Shah v. Cnty. of L.A.*, 797 F.2d 743, 745 (9th Cir. 1986). The County Defendants do so without waiving any rights or objections.

[2]    This Court can take judicial notice of this public record without converting the motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).

of federal statutory and constitutional law: (1) the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20501 *et seq.*; (2) the Help America Vote Act of 2002 ("HAVA"), 52 U.S.C. § 21081 *et seq.*; and (3) Article I, § 2 of the United States Constitution ("the Qualifications Clause"). (SER32–36). Isabel sought "compensatory and punitive damages." (SER36). Isabel sued Reagan, in her individual capacity, Maricopa County, and Maricopa County Recorder Adrian Fontes, in his official capacity.[3] (SER24–25).

In June 2019, after briefing, the Court dismissed all three claims without prejudice. (ER041–063). The Court dismissed Isabel's NVRA claim because, unlike § 1983, the NVRA's remedial scheme authorizes only declaratory and injunctive relief, and Congress did not intend NVRA claims to be brought under § 1983. (ER49–54). The Court dismissed Isabel's HAVA claim because that statute creates a federal right to cast a provisional ballot, and the provisional ballot only needs to be counted "if the appropriate election official 'determines' that the individual is eligible"; the Court concluded that HAVA doesn't create a federal right to challenge state-law eligibility determinations. (ER55–58). And the Court dismissed Isabel's Qualifications Clause claim because that constitutional provision prohibits states from establishing different qualifications for voting for state and federal offices, and

---

[3]     In this brief, Maricopa County and Maricopa County Recorder Adrian Fontes will be referred to collectively as "County Defendants," where appropriate.

Isabel's ballot was treated equally for all of the contested races when it was wholly discarded. (ER58–62).

## II.     Isabel amended the complaint, and the district court dismissed it.

In June 2019, Isabel filed the First Amended Complaint. (SER4). He did not allege a new factual theory. (*See* Doc. 65 at 2 (describing amendments)).[4] He also did not amend the NVRA claim. (*Id.*). Isabel amended the HAVA claim to allege that § 304 of HAVA "expressly precludes [voter registration] determinations based on 'State requirements [that are] inconsistent with the [NVRA],' " and because the October 10 voter registration deadline conflicted with the NVRA, Defendants violated HAVA. (SER16). Isabel also amended his constitutional claim to rely broadly on the United States Constitution rather than just the Qualifications Clause to make his claim. (SER17–19).

In November 2019, the district court dismissed Isabel's First Amendment Complaint with prejudice. (ER013–028). The district court concluded that Isabel failed to state a claim under HAVA for an alleged NVRA violation because HAVA didn't establish voter registration deadlines, and Isabel couldn't use HAVA to "circumvent" the NVRA's remedial scheme. (ER16–18). The district court concluded that Isabel failed to state a claim under the "right to vote" because no legal

---

[4]     This Brief refers to documents from the district court's docket with "Doc." and the corresponding docket entry number.

precedent established that state officials could be sued for money damages under § 1983 for making an incorrect voter-eligibility determination. (ER18–28).

## Summary of the Argument

Isabel seeks, without any authority, to obtain money damages from the Defendants for his failure to register in time to vote in the 2016 general election. Isabel's NVRA claim fails because that act's text, structure, and history show that Congress did not intend for plaintiffs to enforce its provisions by obtaining money damages under § 1983. Isabel's HAVA claim fails for the same reason, and because Isabel has not stated a claim under HAVA on the facts of this case. Isabel's claim alleging the violation of the "right to vote" fails because it depends upon federal common law and broad constitutional principles expressed in Supreme Court case law rather than the specific constitutional and statutory provisions that provide the right to vote. This Court should affirm.

## Standard of Review

This Court reviews *de novo* the district court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6). *Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). The court assumes the truth of all factual allegations in the complaint. *Shah*, 797 F.2d at 745. "Dismissal [under Rule 12(b)(6)] is proper when the complaint does not make out a cognizable legal theory or does not allege sufficient facts to support a cognizable legal theory." *Cervantes v. Countrywide*

*Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011). Generally, the court looks only to the face of the complaint and documents attached thereto. *Van Buskirk Studios, Inc. v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). But the court may consider matters of judicial notice without converting the motion to dismiss into a motion for summary judgment. *Ritchie*, 342 F.3d at 907–08.

## Argument

## I.     The district court properly dismissed Isabel's NVRA claim.

### A.     The district court properly dismissed Isabel's NVRA claim because Congress intended for plaintiffs to bring NVRA claims under the NVRA not § 1983.

In his original complaint, Isabel claimed that Defendants violated § 20507(a)(1)'s timeline for voter registration. (SER32–34). Isabel did not seek to remedy this alleged violation under the NVRA by utilizing the procedures that are statutorily provided. *See* 52 U.S.C. § 20510(b). Instead, Isabel sought monetary damages under § 1983. (SER32, 36).

No Ninth Circuit decision has considered whether the NVRA permits a plaintiff to sue under § 1983 to obtain monetary damages for an alleged NVRA violation.[5] "The critical question . . . is whether Congress meant the judicial remedy

---

[5]     The only circuit court to consider this question concluded that plaintiff lacked standing under § 1983 to pursue an NVRA claim because "[s]ection 1983 . . . is not an available remedy for deprivation of a statutory right when the statute, itself, provides an exclusive remedy for violations of its own terms." *Assoc. of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 367 n.11 (5th Cir. 1999) (citations and

expressly authorized by [§ 20510(b)] to coexist with an alternative remedy available in a § 1983 action." *See City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 120–21 (2005); *Middlesex Cnty. Sewerage Authority v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 13 (1981) ("The key to the inquiry is the intent of the Legislature.").

Assuming the NVRA created a federal right, "there is only a rebuttable presumption that the right is enforceable under § 1983." *Rancho Palos Verdes*, 544 U.S. at 120. Here, the text, structure, and legislative history of the NVRA show Congress' intent that § 20507's enforcement provisions are the only mechanisms for remedying NVRA violations. *See id.*; *Sea Clammers*, 453 U.S. at 13 ("We look first, of course, to the statutory language, particularly to the provisions made therein for enforcement and relief. Then we review the legislative history and other traditional aids of statutory interpretation to determine congressional intent."); *Smith v. Robinson*, 468 U.S. 992, 1009–13 (1984) ("The legislative history gives no indication that Congress intended such a result.").

---

quotation marks omitted). While not binding on this Court, that decision is persuasive. *Roy v. Lampert*, 465 F.3d 964, 971 (9th Cir. 2006) ("Since we have no cases on point from this circuit, we look to cases from other circuits for guidance.").

The district courts considering the question are split. *See Nat'l Coal. of Students with Disabilities Educ. & Legal Def. Fund v. Allen*, 961 F. Supp. 129, 132 (E.D. Va. 1997) (rejecting § 1983 suit to remedy alleged NVRA violation), *reversed on other grounds*, 152 F.3d 283 (4th Cir. 1998); *Condon v. Reno*, 913 F. Supp. 946, 960 (D.S.C. 1995) (permitting § 1983 suit to remedy alleged NVRA violation); *Assoc. of Cmty. Orgs. for Reform Now v. Miller*, 912 F. Supp. 976, 982 (W.D. Mich. 1995) (same).

1. The text of the NVRA's private right of action provision precludes a § 1983 remedy. It states: "the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation." 52 U.S.C. § 20510(b)(2). "The provision of an express, private means of redress in the statute itself is ordinarily an indication that Congress did not intend to leave open a more expansive remedy under § 1983." *Rancho Palos Verdes*, 544 U.S. at 121; *Sea Clammers*, 453 U.S. at 14–15 ("[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it."). "In the absence of strong indicia of a contrary congressional intent, [courts] are compelled to conclude that Congress provided precisely the remedies it considered appropriate." *Id.* Based on the text of § 20510(b)(2), Congress did not intend for plaintiffs to sue for monetary damages under § 1983 for NVRA violations. *Cf. Rancho Palos Verdes*, 544 U.S. at 122 (concluding statutory scheme "which adds no remedies to those available under § 1983, and limits relief in ways that § 1983 does not," precluded § 1983 remedy).

2. The NVRA's structure supports this reading. The NVRA is "a comprehensive statute designed to facilitate voter registration." *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1035 (9th Cir. 2015); 52 U.S.C. § 20501(b) (describing purposes). It contains its own enforcement provisions. 52 U.S.C. § 20510(a), (b). Relevant to this appeal, Congress created a private right of action

for "[a] person who is aggrieved by a violation of" the NVRA. *Id.*, § 20510(b). That private right of action triggers when elections officials fail to correct the violation after "written notice" or if the violation occurs within 30 days of the election. *Id.*, § 20510(b)(2). At that point, "the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation." *Id.*

Glaringly absent from the NVRA's statutory scheme is any provision for money damages—which is presumably why Isabel seeks to bring his claim pursuant to § 1983. But nothing in the text and structure of the NVRA indicates that Congress authorized plaintiffs to bypass enforcement provisions under § 20510(a) and (b) in order to utilize § 1983's. *Cf. Smith*, 468 U.S. at 1009–13 ("Allowing a plaintiff to circumvent the EHA administrative remedies would be inconsistent with Congress' carefully tailored scheme."); *Rancho Palos Verdes*, 544 U.S. at 127–29 (Breyer, J., concurring) ("And, in my view, to permit § 1983 actions here would undermine the compromise—between purely federal and purely local siting policies—that the statute reflects.").

**3.** The NVRA's legislative history confirms this reading. *See Sea Clammers*, 453 U.S. at 16–18 (relying on congressional reports); *Smith*, 468 U.S. at 1009–13 (same); *see also Rancho Palos Verdes*, 544 U.S. at 129–32 (Stevens, J., concurring) (discussing legislative history in private right of action analysis). As

presented by Defendant Reagan below, and noted (but not considered) by the district court, congressional reports demonstrate that Congress simply did not intend the award of "monetary damages" under the NVRA. (ER050, n.3 (citing H.R. Rep. No. 103-9, at 20 (1993), and S. Rep. No. 103-6, at 36-37 (1993)); ER054, n.7). The NVRA's text—providing only "declaratory or injunctive relief"—bears this out.

**B. Isabel's argument on appeal misreads § 20510(d).**

On appeal, Isabel solely relies on 52 U.S.C. § 20510(d), the so-called NVRA "savings clause," to challenge this analysis. (*See* Opening Brief ("O.B.") at 25–30). Isabel argues that § 20510(d) is "nearly identical" to a pair of savings clauses in securities law; that the Supreme Court interpreted these savings clauses to allow "additional remedies" beyond other express private right of action provisions, *see Herman & MacLean v. Huddleston*, 459 U.S. 375 (1983); and that based on the "prior-construction canon of statutory interpretation," this apparent similarity "makes clear that Congress intended the NVRA to be enforced by *other* remedies provided by *other* laws." (O.B. at 27–30).

Isabel's argument reduces the analysis of § 20510 to a binary choice between the savings clauses in *Herman* and the savings clause in *Sea Clammers*. (*See* O.B. at 29–30). This argument is unavailing.

**1.** Isabel's argument ignores the text of § 20510, the structure of the NVRA as a whole, and its legislative history. *See* Section I.A., *supra*. The Supreme

Court rejected such a myopic approach in *Rancho Palos Verdes*. *See* 544 U.S. at 122 (rejecting government's argument "that the availability of a private judicial remedy is not merely indicative of, but conclusively establishes, a congressional intent to preclude § 1983 relief").

    **2.**    Isabel's reliance on a "nearly identical" savings clause in a different statutory scheme in another field of law runs counter to his cited precedent. In *Cannon v. University of Chicago*, the Supreme Court considered whether Congress intended to "deny" a private right of action under Title IX by comparing its text and history to Title VI. *See* 441 U.S. 677, 694–704 & nn.16, 19 (1979) ("Title IX [of the Education Amendments Act of 1972] was patterned after Title VI of the Civil Rights Act of 1964."). In *United States v. Wells*, the Supreme Court analyzed whether materiality of falsehood is an element in one federal crime, in part, by considering the presence and absence of materiality provisions in "other provisions involving false representations." 519 U.S. 482, 492–95 (1997) ("Statutory history confirms the natural reading."); *see also Bragdon v. Abbott*, 524 U.S. 624, 642–45 (1998) (relying on statutory history and administrative and judicial determinations to conclude that Congress intended to adopt § 504 of the Rehabilitation Act of 1973's definition of handicap in the Americans with Disabilities Act of 1990 ("ADA")).

    *Miranda B. v. Kitzhaber*, 328 F.3d 1181 (9th Cir. 2003), does not suggest a different result. There, this Court took two approaches to determine whether the

ADA and Rehabilitation Act permitted *Ex Parte Young*, 209 U.S. 123 (1908), suits. *Id.* at 1188–89. First, it compared those acts to the Telecommunications Act of 1996—a different statutory scheme in another area of law—because Supreme Court precedent interpreting the Telecommunications Act addressed *Ex Parte Young* doctrine. *Id.* at 1188 (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 74 (1997)). Second, it examined the statutory history of the ADA, linking its remedial scheme to Title VI after "other circuits had determined that *Ex parte Young* suits were permissible for violations of Title VI" and the Rehabilitation Act. *Id.* at 1189.

Here, it is inapt to apply *Herman* and the securities savings clauses like the *Miranda B.* court applied *Seminole Tribe* and the Telecommunications Act. First, *Herman* did not address the same issue (here: § 1983 doctrine). *See also Rancho Palos Verdes*, 544 U.S. at 121–22 ("Moreover, in *all* of the cases in which we have held that § 1983 *is* available for violation of a federal statute, we have emphasized that the statute at issue, in contrast to those in *Sea Clammers* and *Smith, did not* provide a private judicial remedy (or, in most of the cases, even a private administrative remedy) for the rights violated."). Second, nothing in the NVRA's text or statutory history links § 20510(d) with the securities savings clauses. It is simply an apples-to-oranges comparison. This Court should reject it.

**3.** Even if this Court ventures down Isabel's savings clause rabbit hole, the textual analysis does not yield any fruit. Consider again the text of the NVRA's

savings clause:

> The rights and remedies established by this section are in addition to all other rights and remedies provided by law, and neither the rights and remedies established by this section nor any other provision of this chapter shall supersede, restrict, or limit the application of the Voting Rights Act of 1965 (42 U.S.C. 1973 et seq.).

52 U.S.C. § 20510(d). Now consider one of the savings clauses in *Herman*:

> [T]he rights and remedies provided by this chapter shall be in addition to any and all other rights and remedies that may exist at law or in equity.

15 U.S.C. § 78bb(a)(2); and one of the savings clauses in *Sea Clammers*:

> Nothing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any effluent standard or limitation or to seek any other relief (including relief against the Administrator or a State agency).

33 U.S.C. § 1365(e).

It is impossible to conclude that the language in the securities savings clauses is "nearly identical" to § 20510(d) without also concluding that the savings clauses in *Sea Clammers* are just as—if not more—"nearly identical." Regardless, the text does not indicate that Congress intended remedies created by the NVRA to "be enforced by remedies provided elsewhere." (*See* O.B. at 29); *Rancho Palos Verde*, 544 U.S. at 127 ("We refused to read those clauses [in *Sea Clammers*] to 'preserve' a § 1983 action, holding that they did not 'refer . . . to a suit for redress of a violation of th[e] statutes [at issue] . . . .' "). This Court should reject Isabel's incongruous savings clause argument and affirm the district court's dismissal of Isabel's NVRA

claim.

## II. The district court properly dismissed Isabel's HAVA claim.

### A. Isabel waived his HAVA claim.

In a footnote, Isabel states: "The District Court's interpretation of the Help America Vote Act is equally absurd and should be reversed." (O.B. at 20). Yet Isabel does not address the district court's analysis and dismissal of his HAVA claim. (*See* ER056–57). Isabel thus waived his HAVA claim. *See City of Emeryville v. Robinson*, 621 F.3d 1251, 1262 n.10 (9th Cir. 2010) (Appellant waived claim "[b]y failing to address the issue in its opening brief except in a footnote"). This Court should affirm the district court's dismissal.

### B. Isabel's HAVA claim fails even if considered on the merits.

Assuming *arguendo* that Isabel preserved his HAVA claim with the throw-away reference in a footnote, his argument is not well-taken. In his First Amended Complaint, Isabel relied on 52 U.S.C. § 21082(a)(4) and § 21084. (SER16–17). Isabel alleged that because Defendants violated NVRA by not counting his provisional ballot, they necessarily violated HAVA. (*Id.*). The district court properly dismissed this claim. (ER016–18).

1. As a matter of law, Isabel cannot bring a § 1983 suit to enforce HAVA. "Unlike the NVRA, the HAVA does not include a private right of enforcement. By its text, the HAVA only allows enforcement via attorney general suits or administrative complaint." *Am. Civ. Rights Union v. Phila. City Commissioners*, 872

F.3d 175, 184–85 (3d Cir. 2017) (citing 52 U.S.C. §§ 21111, 21112). The structure of HAVA includes a "comprehensive enforcement scheme" and "the requirements of that enforcement procedure may not be bypassed by bringing suit directly under § 1983." *Cf. Sea Clammers*, 453 U.S. at 20 (internal quotation marks omitted). Below, Isabel did not present legislative history that undermines this reading.

2. Even if Isabel could bring a HAVA claim under § 1983, he did not plead sufficient facts to state a claim. Under § 302(a)(4) of the HAVA, a voter is entitled to have his provisional ballot "counted" only if a "State or local election official . . . determines that the individual is eligible under State law to vote." 52 U.S.C. § 21082(a)(4). In his First Amended Complaint, Isabel makes three admissions that are fatal to his claim.

First, citing A.R.S. § 16-120, Isabel acknowledges that "[t]o be eligible to vote in a particular election, Arizona law requires that the voter's registration form be 'received by the county recorder . . . prior to midnight of the twenty-ninth day' before that election"—i.e., October 10, 2016. (SER7). Notably, Isabel attempts to confuse the issue by referring to this statutory requirement as the "October 10, 2016 Policy." (*See* SER8). But it was not a mere "policy" devised by the Defendants—it was a statutory requirement that set the voter registration deadline for October 10, 2016, as Isabel admitted.

Second, Isabel admits he did not register until after the voter registration

deadline. (*See* SER5). And third, Isabel admits that the Arizona elections officials declined to count his ballot because they determined that Isabel was ineligible to vote. (*See* SER11).

Further, Isabel fails to state a claim under § 304 of HAVA. It states:

> The requirements established by this subchapter are minimum requirements and nothing in this subchapter shall be construed to prevent a State from establishing election technology and administration requirements that are more strict than the requirements established under this subchapter so long as such State requirements are not inconsistent with the Federal requirements under this subchapter or any law described in section 21145 of this title [which includes the NVRA].

52 U.S.C. § 21084. It thus prohibits "election technology and administration requirements" that conflict with the NVRA. But as the district court concluded, "a voter registration deadline established by Arizona, or any other state, cannot be described as an 'election technology and administration requirement[] that [is] more strict than the requirements established under this subchapter.' " (ER017 (quoting 52 U.S.C. § 21084)); *see also Sandusky Cnty. Democratic Party v. Blackwell*, 387 F.3d 565, 578 (6th Cir. 2004) ("HAVA does not require that any particular ballot, whether provisional or 'regular,' must be counted as valid."). Isabel thus failed to state a claim under HAVA.

**3.** Further, even if the voter registration deadline could be stretched to mean an "election technology and administration requirement," Isabel cannot invoke HAVA to bypass the NVRA's remedial scheme. (*See* ER017–18). That is not what

21

Congress intended with either statute. *Cf. Rancho Palos Verdes*, 544 U.S. at 124 (holding "limitations upon the remedy contained in the statute are deliberate and are not to be evaded through § 1983"). This Court should affirm the district court's dismissal.

## III. The district court properly dismissed Isabel's constitutional claim.

### A. Isabel fails to state a claim alleging a violation of "the right to vote" as a predicate for a § 1983 suit for money damages.

This Court has not addressed whether under § 1983 a plaintiff can recover monetary damages from a state official for making an incorrect determination regarding an individual voter's eligibility. Section 1983 makes government officials liable if they cause "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

Isabel's First Amended Complaint attempted to state a claim alleging a violation of "the right to vote." (SER17–19). Isabel based this right on "federal common law" that has been "long established in the Supreme Court's jurisprudence." (Doc. 65 at 4) Isabel further argued that "the right to vote" necessarily includes "the right of qualified voters within a state to cast their ballots and have them counted at Congressional elections." (*Id.* at 8 (citation omitted)).

On appeal, Isabel eschews use of the phrase "federal common law" in his briefing, favoring instead a "constitutional right" established by Supreme Court

jurisprudence. (*See, e.g.*, O.B. at 11–12). Regardless of how Isabel couches his claim, it fails as a matter of law.

1.　　The Supreme Court "has found it necessary, in a few and restricted instances to develop federal common law." *City of Milwaukee v. Illinois & Michigan*, 451 U.S. 304, 313 (1981) (quotation marks and citations omitted). The separation of powers tempers that necessity:

> Federal courts, unlike state courts, are not general common-law courts and do not possess a general power to develop and apply their own rules of decision. The enactment of a federal rule in an area of national concern, and the decision whether to displace state law in doing so, is generally made not by the federal judiciary, purposefully insulated from democratic pressures, but by the people through their elected representatives in Congress.

*Id.* at 312–13 (citations omitted). Thus, the Supreme Court makes federal common law "[w]hen Congress has not spoken to a particular issue . . . and when there exists a significant conflict between some federal policy or interest and the use of state law." *Id.* (quotations marks and citations omitted).

Here, Isabel argues that federal courts should rely on Supreme Court jurisprudence to vindicate "the right to vote." But Congress has spoken on this "particular issue" through HAVA, the NVRA, and other federal statutory schemes respecting voting rights.[6] And Isabel's "federal common law" argument is

---

[6]　A proper understanding of "federal common law" thus undercuts Isabel's reliance on *Wayne v. Venable*, 260 F. 64 (8th Cir. 1919), a one-hundred-year-old out-of-circuit case. Although that court permitted a claim for damages when plaintiffs were

incompatible with the conflict between the remedies in the NVRA, HAVA, and § 1983. Isabel's claim fails as a matter of law.

2. Relatedly, Isabel's resort to "federal common law" and "the right to vote" as established in Supreme Court jurisprudence is unavailing because specific constitutional provisions encompass these rights. In the related context of bringing a § 1983 claim alleging a violation of substantive due process, the Supreme Court has rejected reliance on "the more generalized notion" of constitutional concerns in favor of the "explicit textual source of constitutional protection." *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.").

Below, the district court properly rejected Isabel's first pass at a constitutional claim under a specific provision: the Qualifications Clause. (ER058–060). That provision states: "The House of Representatives shall be composed of Members chosen every second Year by the People of the several States, and the Electors in

---

prevented "from casting their votes therein for presidential electors, United States Senator, and a member of Congress at the [1916] general election," *id.* at 65, the HAVA, enacted in 2002, addresses that precise issue. *See* 52 U.S.C. § 21082(a) (permitting an individual "to cast a provisional ballot" under certain circumstances). And Isabel's reliance on *United States v. Classic*, 313 U.S. 299 (1941)—a case that considered the reach of federal criminal law not § 1983 suits for money damages— is equally misplaced.

each State shall have the Qualifications requisite for Electors of the most numerous Branch of the State Legislature." Art. I, § 2. The district court correctly ruled that Isabel failed to state a claim under it because the Defendants did not violate its equal treatment requirement. (ER059 (citing *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 229 (1986))).

Likewise, in *Arizona Democratic Party v. Reagan*, a related case relied on extensively by Isabel below and on appeal, the district court rejected First and Fourteenth Amendment claims brought on the same factual basis as Isabel's "right to vote" claim. *See* No. CV-16-03618-PHX-SPL, 2016 WL 6523427, at *8–*12 (D. Ariz. Nov. 3, 2016). And Isabel's reliance on *Nixon v. Herndon*, 273 U.S. 536 (1927), and *Taylor v. Howe*, 225 F.3d 993 (8th Cir. 2000), further illustrates the point: in both cases, plaintiffs challenged race-based discrimination under specific constitutional and statutory provisions, *see Nixon*, 273 U.S. at 540–41 (bringing challenge under Fourteenth and Fifteenth Amendments); *Taylor*, 225 F.3d at 996 ("plaintiffs' substantive claims are based on 42 U.S.C. § 1971(a)(1), (a)(2)(A), and (a)(2)(B); the Fourteenth and Fifteenth Amendments to the United States Constitution, and 42 U.S.C. § 1973(a), (b)"); neither relied on "the right to vote" under "federal common law."

Taken together, these constitutional provisions and statutory schemes enacted by Congress—not "federal common law" or "the right to vote" as expressed in

Supreme Court jurisprudence—provide the unfulfilled basis for the type of claim Isabel sought to bring here.

**3.**     Indeed, Isabel's sweeping view of the "federal common law" and the "right to vote" as expressed by the Supreme Court conflicts with well-established federalism concerns. "[T]he right to vote is the right to participate in an electoral process that is necessarily structured to maintain the integrity of the democratic system." *Burdick v. Takushi*, 504 U.S. 428, 441 (1992). The United States Constitution affords states the latitude to provide that structure. *See* Art. I, § 4 ("The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof . . . ."); *Storer v. Brown*, 415 U.S. 724, 730 (1974) ("[A]s a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes.").

With these principles in mind, this Court has acknowledged that "[w]hile we are mindful that federal courts have a duty to ensure that national, state and local elections conform to constitutional standards, we undertake that duty with a clear-eyed and pragmatic sense of the special dangers of excessive judicial interference with the electoral process." *Soules v. Kauaians for Nukolii Campaign Comm.*, 849 F.2d 1176, 1182–83 (9th Cir. 1988); *see also Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 208 (2008) (Scalia, J., concurring) ("[V]oter-by-voter

examination of the burdens of voting regulations would prove especially disruptive. A case-by-case approach naturally encourages constant litigation."); *cf. Burdick*, 504 U.S. at 433 ("[T]o subject every voting regulation to strict scrutiny and to require that the regulation be narrowly tailored to advance a compelling state interest . . . would tie the hands of States seeking to assure that elections are operated equitably and efficiently.")).

In the name of "federal common law," and using the threat of money damages under § 1983, Isabel's suit seeks to upend these concerns. "That sort of detailed judicial supervision of the election process would flout the Constitution's express commitment of the task to the States." *See Crawford*, 553 U.S. at 208 (Scalia, J., concurring) (citing Art. I, § 4).

**4.** Instead, persuasive case law suggests that Isabel cannot maintain a § 1983 suit for money damages under these circumstances. In *Powell v. Power*, the Second Circuit rejected a § 1983 suit seeking to enforce Article I, Section 2. 436 F.2d 84, 88 (2d Cir. 1970) ("[W]hile article I, section 2 may outlaw purposeful tampering by state officials . . . we cannot believe that the framers of our Constitution were so hypersensitive to ordinary human frailties as to lay down an unrealistic requirement that elections be free of any error." (Citation omitted)). Reflecting federalism concerns, the Second Circuit stated: "Were we to embrace plaintiffs' theory, this court would henceforth be thrust into the details of virtually every

election, tinkering with the state's election machinery, reviewing petitions, registration cards, vote tallies, and certificates of election for all manner of error and insufficiency under state and federal law." *Id.* at 86.

The Fourth Circuit also rejected § 1983 as a vehicle to challenge alleged errors in the electoral process. *Hutchinson v. Miller*, 797 F.2d 1279, 1286–87 (4th Cir. 1986). "Elections are, regrettably, not always free from error," but "serious problems of federalism and separation of powers" would occur if federal courts permitted state officials' liability for money damages under such circumstances. *Id.*; *see also Soules*, 849 F.2d 1182 (citing *Hutchinson*, and "endors[ing]" its "restrained approach to election challenges"). Isabel's claim thus fails as a matter of law.

## B. The County Defendants did not cause Isabel to miss the voter registration deadline.

Even if Isabel could pursue a broad "right to vote" claim without relying on a federal statutory scheme or constitutional provision, the County Defendants did not cause the alleged violation.

**1.** Isabel's constitutional claim depends upon his allegation that he was an eligible voter because he registered to vote on October 11, 2016. (*See, e.g.*, SER6, 8). He was not, and the County Defendants did not cause his ineligibility. Consistent with Arizona Revised Statute ("A.R.S.") § 11-413, the Maricopa County Board of Supervisors does not recognize Columbus Day as a legal holiday. (*See* SER2–3). On October 10, 2016, Maricopa County offices were open for business, and Isabel could

have gone in person to any Maricopa County office where someone could register to vote. Further, Isabel does not allege that the Maricopa County Defendants set the voter registration deadline. (*See* SER8).

Thus, Maricopa County did not "cause" the alleged constitutional violation. *See Harper v. City of L.A.*, 533 F.3d 1010, 1026 (9th Cir. 2008) ("In a § 1983 action, the plaintiff must also demonstrate that the defendant's conduct was the actionable cause of the claimed injury. . . . To meet this causation requirement, the plaintiff must establish both causation-in-fact and proximate causation."); *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978) (predicating municipal liability on "official policy as the moving force of the constitutional violation").

Further, under A.R.S. § 16-120(A), the voter registration deadline is set as the 29th day preceding election, which was October 10, 2016 for the 2016 general election. Because Maricopa County was open for business that day, and Isabel could have registered to vote had he availed himself of the opportunities available to do so, Isabel cannot show that Maricopa County violated a state statute. Indeed, Maricopa County chose not to violate A.R.S. § 16-120(A) by adhering to the voter registration deadline of 29 days before the election.

**2.** Isabel's claim also depends upon his "disenfranchisement." (*See, e.g.*, SER5). But the County Defendants did not disenfranchise him when they properly declined to count his ballot.

It is well-established that the enforcement of voter registration deadlines does not disenfranchise voters from an opportunity to vote. *See Rosario v. Rockefeller*, 410 U.S. 752 (1973); *Barilla v. Ervin*, 886 F.2d 1514, 1525 (9th Cir. 1989), *overruled on other grounds by Simpson v. Lear Astronics Corp.*, 77 F.3d 1170, 1174 (9th Cir. 1996). In *Rosario*, the Supreme Court rejected plaintiffs' claim that they were disenfranchised when they waited until after the deadline to enroll in a political party—when they could have registered prior to the deadline—with the result that they were unable to vote in the primary. 410 U.S. at 753–55. The Supreme Court held that the challenged statute "did not absolutely disenfranchise the class to which the petitioners belong" but "merely imposed a time deadline on their enrollment, which they had to meet in order to participate in the next primary." *Id*. at 768. It concluded that "if their plight can be characterized as disenfranchisement at all, it was not caused by [the challenged deadline], but by their own failure to take timely steps to effect their enrollment." *Id*. at 758.

Similarly, in *Barilla* this Court concluded that Oregon's voter registration deadline did not disenfranchise plaintiffs. 886 F.2d at 1516, 1525. Relying on *Rosario*, this Court concluded that the plaintiffs "were all disenfranchised by their willful or negligent failure to register on time," not by Oregon's registration deadline. *Id*. at 1525. "They could have registered in time . . . but they failed to do so." *Id*.

And in *Arizona Democratic Party v. Reagan*, the district court—reviewing the same issue as here—concluded that the October 10 deadline did not disenfranchise voters who registered on October 11. *See Reagan*, 2016 WL 6523427, at *9. Those voters "could have registered in time for the general election, but unfortunately did not do so." *Id.* The Court recognized that "[t]he deadline did not prevent individuals from registering to vote in-person at the [Arizona Department of Transportation's Motor Vehicle Division ("MVD")] or by postmarked mail; it merely required those wishing to do so during [MVD's] open operating business hours at some date and time prior to October 10, 2016." *Id.* Accordingly, the district court concluded that there was no disenfranchisement, and any burden on constitutional rights was *de minimus*. *Id.* at *10, *12. Because the registration deadline served important state interests, the constitutional claims failed. *Id.* at *10–*12.

Here, Isabel alleges that he was disenfranchised by the October 10 registration deadline. (SER5, 13). Like the plaintiffs in *Rosario* and *Barilla*, Isabel could have registered before the deadline, but inexplicably chose not to. He could have even registered on October 10 at the Maricopa County Recorder's Office, which was open, yet chose not to do so. Taking all allegations in the First Amended Complaint as true, Isabel still does not and cannot allege that the County Defendants did anything more than follow the consequences of the time limitation on registration in accordance with Arizona law. Because what Isabel complains about is merely a

registration deadline and not a ban on voting, responsibility for disenfranchisement rests with Isabel regardless of whether the time limitation was contrary to law or should have been set differently.

    **3.**    Further, Isabel's reliance on *Arizona Democratic Party v. Reagan* to argue that notwithstanding his failure to timely register the County Defendants should have counted his ballot is misplaced. (*See, e.g.*, O.B. at 19–21). In that case, the district court agreed with plaintiffs that Arizona's October 10 registration deadline violated the NVRA and state law. *Reagan*, 2016 WL 6523427, at *14, *16. But it denied plaintiffs' request for relief, and refused to order the state to count ballots cast by those who registered late. *Id*. at *16–*18. The district court concluded that plaintiffs' delay in bringing their lawsuit by waiting until October 19—the proverbial eve of the election—precluded the relief they sought, which was to have their votes counted. *Id*. at *17. Isabel now seeks monetary damages for the County Defendants' failure to perform an obligation the district court in *Arizona Democratic Party v. Reagan* refused to assign them. Under these circumstances, Isabel fails to state a claim.

**Conclusion**

For these reasons, this Court should affirm the district court's dismissal of

Isabel's claims under the NVRA, HAVA, and the Constitution.

**RESPECTFULLY SUBMITTED** this 5th day of June, 2020.

ALLISTER ADEL
MARICOPA COUNTY ATTORNEY

By:   /s/Joseph J. Branco
       JOSEPH E. LA RUE
       JOSEPH J. BRANCO
       TALIA OFFORD
       Deputy County Attorneys
       CIVIL SERVICES DIVISION
       Security Center Building
       222 N. Central Ave, Suite 1100
       Phoenix, AZ 85004-0496
       ca-civilmailbox@mcao.maricopa.gov
       *Attorneys for Defendants-Appellees*
       *Maricopa County and Maricopa*
       *County Recorder Adrian Fontes*

## Statement of Related Cases

Under Ninth Circuit Rule 28-2.6, Defendants-Appellees assert that there are no known related cases currently pending before this Court.

**Certificate of Compliance**

1.  This brief complies with the type and volume limits of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 7,009 words, excluding parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.  This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally-spaced typeface using Microsoft Word 2010 in Times New Roman 14 point type.

Dated this 5th day of June, 2020.

/s/ Joseph J. Branco
Joseph J. Branco
Deputy County Attorney

Maricopa County Attorney's Office
Civil Services Division
222 North Central Avenue, Suite 1100
Phoenix, Arizona 85004-0496
ca-civilmailbox@mcao.maricopa.gov
*Attorney for Defendants-Appellees*
*Maricopa County and Maricopa County*
*Recorder Adrian Fontes*