No. 19-17397

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

DAVID ISABEL, individually
and on behalf of all others similarly situated,

*Plaintiff-Appellant,*

*vs.*

MICHELE REAGAN, in her individual capacity; et al.,

*Defendants-Appellees.*

---

## PLAINTIFF-APPELLANT'S OPENING BRIEF

---

Appeal from the United States District Court
District of Arizona
CV18-03217-PHX-DWL

---

Spencer G. Scharff
SCHARFF PLLC
502 W. Roosevelt Street
Phoenix, Arizona 85003
(602) 739-4417
spencer@scharffplc.com

Nathan Fidel
MILLER, PITT, FELDMAN & MCANALLY, P.C.
2800 N. Central Avenue, Suite 840
Phoenix, Arizona 85004
(602) 266-5557
nfidel@mpfmlaw.com

Scott Caplan
THE LAW OFFICE OF SCOTT CAPLAN, P.C.
34-18 Northern Blvd., Ste. B28
Long Island City, NY 11101

*Counsel for Plaintiff-Appellant David Isabel*

# TABLE OF CONTENTS

Introduction…………………………………………………………..………1

I.  Plaintiff timely registered to vote under federal and state law. ..........................2

    A.  Defendant Reagan waived her right to argue that Plaintiff's registration was untimely under the NVRA. .................................................3

    B.  Defendant Reagan's claim about timeliness under the NVRA is inconsistent with her prior position in *ADP* and in the District Court. ...................................................................................................3

    C.  Plaintiff timely registered to vote under both federal and state law...........4

II.  Defendants violated Plaintiff's right to vote, and that violation is actionable under the Civil Rights Statutes. ..........................................................................8

    A.  The *Classic* line of cases makes clear that the right to vote is actionable under the Civil Rights Statutes. ...............................................10

    B.  A voter need not allege discrimination or criminal misconduct to seek damages under § 1983.......................................................................11

    C.  Defendants' remaining arguments should also be rejected. ....................13

III. Defendants violated Plaintiff's voter-registration rights under the NVRA, and Plaintiff is entitled to seek relief under § 1983. ................................................15

    A.  Congress expressly preserved "all other rights and remedies provided by law," which includes remedies under § 1983. ....................16

    B.  Defendants' counterarguments all fail.....................................................19

    C.  The NVRA and constitutional claims are different. ................................29

    D.  Summary of NVRA preclusion arguments...............................................29

IV. Plaintiff sufficiently alleged causation............................................................30

    A.  Plaintiff sufficiently alleged that the County caused him harm. ..............30

    B.  Defendants' reliance on *Rosario* and *Barilla* is misplaced. .....................32

Conclusion…………………………………………………………...………33

# TABLE OF AUTHORITIES

## CASES

*Arizona Democratic Party v. Reagan*, 2016 WL 6523427 (D. Ariz. 2016)..........4, 6

*Ashby v. White*, 1 Bro.P.C. 62, 1 Eng.Rep. 417 (H.L.1703)....................................14

*ASW v. Oregon*, 424 F.3d 970 (9th Cir. 2005)..........................................................22

*Barilla v. Ervin*, 886 F.2d 1514 (9th Cir. 1989) ......................................................32

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)...................................................................................................12

*Blessing v. Freestone*, 520 U.S. 329 (1997) .......................................................2, 16

*Bush v. Gore*, 531 U.S. 98 (2000)............................................................................32

*Carey v. Piphus*, 435 U.S. 247 (1978) .............................................................. 12, 15

*City of Rancho Palos Verdes v. Abrams,* 544 U.S. 113 (2005)............ 16, 19, 21, 27

*Daniels v. Williams*, 474 U.S. 327 (1986) ...............................................................10

*Epic Sys. Corp. v. Lewis*, 138 S.Ct. 1612 (2018)....................................................28

*Ex Parte Yarbrough*, 110 U.S. 651 (1884) ....................................................... 11, 13

*Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2009) ............... 16, 17, 19, 22

*Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743 (2017) ................................................24

*Harper v. Virginia State Bd. Of Elections*, 383 U.S. 663 (1966) ............................9

*Holder v. Holder*, 305 F.3d 854 (9th Cir. 2002)......................................................29

*Hutchinson v. Miller*, 797 F.2d 1279 (4th Cir. 1986)..............................................14

*Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994).................................................29

*Lorillard v. Pons*, 434 U.S. 575 (1978) ..................................................................26

*Maine v. Thiboutot*, 448 U.S. 1 (1980) ...................................................................16

*Martin ex rel. Heckman v. Midwest Exp. Holdings, Inc.*, 555 F.3d 806 (9th Cir. 2009) ................................................................................29

*Memphis Cmty. Sch. Dist. V. Stachura*, 477 U.S. 299 (1986) .................................12

*Middlesex Cnty. Sewerage Auth. v. Natl Sea Clammers Ass'n,* 453 U.S. 1 (1981) ......................................................................... 17, 26

*Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703 (9th Cir. 1990) ..................................................................................4

*Oregon v. Mitchell*, 400 U.S. 112 (1970) ..................................................7

*POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102 (2014)..............................25

*Powell v. Power*, 436 F.2d 84 (2d Cir. 1970) ..........................................14

*Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61 (2011).....................................28

*Rosario v. Rockefeller*, 410 U.S. 752 (1973) .............................................32

*State v. Oakley*, 180 Ariz. 34, 36 (App. 1994).........................................31

*Swafford v. Templeton*, 185 U.S. 487 (1902)...........................................12

*U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779 (1995) .........................................9

*United States v. Classic*, 313 U.S. 299 (1941).....................................9, 11

*United States v. Fausto*, 484 U.S. 439, 461 (1988) ..................................26

*Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510 (9th Cir. 1992)...........................3

*Wiley v. Sinkler*, 179 U.S. 58 (1900) ...................................................12

**STATUTES**

42 U.S.C. § 1983 ..........................................................................9

52 U.S.C. § 20503 ........................................................................5

52 U.S.C. § 20507 ........................................................................4

52 U.S.C. § 20510 .....................................................................2, 17

A.R.S. § 11-413...................................................................................................31

A.R.S. § 1-303.....................................................................................................31

**OTHER AUTHORITIES**

A. Scalia & B. Garner, Reading Law: The Interpretation of Legal
Texts (2012)...................................................................................................28

## INTRODUCTION

This case asks whether a lawfully registered voter has a remedy when state and local election officials disregard his vote. As set forth in Plaintiff's Opening Brief, Plaintiff David Isabel timely registered to vote for the November 2016 Election, but Defendants—in violation of the National Voter Registration Act of 1993, state law, and the U.S. Constitution—deemed his registration untimely and refused to count his provisional ballot. The district court held that Plaintiff had no remedy: "[A]lthough the right to vote is a fundamental right under federal law, that right doesn't entitle a voter to sue a state election official for money damages under § 1983." [ER024.] As to the NVRA violation, the court held that Plaintiff could not seek damages under § 1983 because damages were not available directly under the NVRA. [ER017.] As to the constitutional violation, the court held that Plaintiff needed to allege "purposeful tampering" to seek § 1983 relief and that no court had previously held that voters deprived of their rights "under these circumstances" could seek damages under § 1983. [ER020–ER028.]

The district court erred. Where state actors deprive citizens of their fundamental rights under federal law—including the right to vote—§ 1983 offers relief. Plaintiff is entitled to seek § 1983 relief for the NVRA violation because § 1983 presumptively applies, and Congress did not intend to preclude damages under § 1983 where it expressly preserved "all other rights and remedies provided

by law." [52 U.S.C. § 20510(d)](#); *see [Blessing v. Freestone](#)*, 520 U.S. 329, 341 (1997). Plaintiff is entitled to seek § 1983 relief for the constitutional violation because there is no "culpable mindset" requirement for voting-rights violations. Plaintiff, in any event, sufficiently alleged culpability because Defendants knew that Plaintiff's vote was valid when they disregarded it. A long line of cases establishes that disenfranchised voters may sue for damages both at common law and under § 1983. *See*, *e.g.*, *Wiley*, *Swafford*, *Bivens*, *Carey*, and *Stachura*, cited *infra*.

Defendants ignore or misapprehend this established precedent and mischaracterize Plaintiff's claims. Plaintiff Isabel respectfully asks this Court to reject Defendants' arguments, reverse the judgment of the district court, and remand for further proceedings.

## I. PLAINTIFF TIMELY REGISTERED TO VOTE UNDER FEDERAL AND STATE LAW.

The court in the *ADP* litigation already concluded that Plaintiff's October 11, 2016 registration was timely under the NVRA and Arizona law. The district court in this case took that ruling at face value. [*See*, e.g., ER043 ("Judge Logan agreed with the plaintiffs that the Secretary violated the NVRA.").] Defendants never challenged that ruling either in *ADP* or in the district court below. On appeal, however, Defendant Reagan now argues that, "[o]n this point, the 2016 District Court [in

*ADP*] erred." [Reagan Br. at 13.][1] This Court should reject Defendant Reagan's challenge as untimely, inconsistent with her prior position, and wrong on the merits.

### A. Defendant Reagan waived any argument that Plaintiff's registration was untimely under the NVRA.

Defendant Reagan had numerous opportunities to argue that Plaintiff's registration was not timely under the NVRA but did not do so—either in the *ADP* litigation, where she was the sole defendant and the NVRA's registration requirements were directly at issue, or in the district court below. Having failed to raise this argument before, she has waived her right to make it now, and this Court should not consider it. *See [Whittaker Corp. v. Execuair Corp.](), 953 F.2d 510, 515 (9th Cir. 1992)* ("[A]n appellate court will not hear an issue raised for the first time on appeal").

### B. Defendant Reagan's claim about timeliness under the NVRA is inconsistent with her prior position in *ADP* and in the district court.

Defendant Reagan's claim is also inconsistent with the position she adopted in *ADP* and at oral argument below, where she conceded and did not question the *ADP* court's conclusion that Plaintiff's registration was timely under the NVRA. [*See* ER077 ("THE COURT: [D]idn't Judge Logan find that the NVRA was violated . . . MR. LASOTA: Yes, Your Honor . . . .")]; *see also [Arizona Democratic Party v.]()*

---

[1] Throughout, "Reagan Br." refers to Dkt. 25 and "County Br." refers to Dkt. 27.

*Reagan*, 2016 WL 6523427, at \*13–14 (D. Ariz. Nov. 3, 2016) (noting that "the Secretary defends [the deadline] on the grounds that the Committees[] lack statutory standing," and *not* on the grounds that the deadline was somehow lawful under the NVRA). Defendant Reagan should be estopped from adopting a new, contrary position on appeal. *See Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 716 (9th Cir. 1990).

### C. Plaintiff timely registered to vote under both federal and state law.

Finally, Defendant Reagan's claim that Plaintiff's registration was untimely is wrong on the merits. As a matter of both federal and state law, October 11th registrants such as Mr. Isabel timely registered for the November 2016 Election, and the *ADP* court was correct in so ruling.

### 1. Federal law established October 11, 2016 as the last day to submit a voter-registration application for the November 2016 Election.

As the district court recognized, the NVRA "requires each state to 'ensure that any eligible applicant is registered to vote in an election' if the applicant has registered to vote 'not later than the lesser of 30 days, or the period provided by State law,[2] before the date of the election.'" [ER049 (Order granting Defendants' first set of motions to dismiss) at 9 (quoting 52 U.S.C. § 20507(a)(1)).]

---

[2]    Mr. Isabel's registration is therefore timely under the NVRA either if the NVRA requires it, or if state law requires it. As set forth herein, both do.

"The statute also identifies four different ways in which a person can register to vote and identifies the date on which each method is deemed effective: (1) submission of a voter registration form to 'the appropriate State motor vehicle authority,' which is effective upon submission; (2) submission of a voter registration form through the mail, which is effective upon the date it is 'postmarked'; (3) in-person registration 'at the voter registration agency,' which is effective when 'accepted'; and (4) submission of a voter registration form to 'the appropriate State election official,' which is effective when 'received.'" [*Id.*]

States must "establish procedures to register" voters through all four methods "notwithstanding any other Federal or State law" and "in addition to any other method of voter registration provided for under State law." 52 U.S.C. § 20503(a). The NVRA also requires states to accept a voter-registration application from any of these avenues and to leave each of these avenues open for a minimum of 30 days before a federal election. 52 U.S.C. § 20507(a)(1)(A)–(D) (requiring each state to register voters applying via any method "not later than the lesser of 30 days, or the period provided by State law, before the date of the election").

Thirty days before the November 2016 Election was October 9, a Sunday, which is a day without postal service. The 29th day before the November 2016 Election was Columbus Day, a legal holiday, and also a day without postal service. In addition, the Motor Vehicle Department was closed during the three-day holiday

weekend. As a result, the first available day for election officials to require that a voter-registration application be postmarked or submitted in person that was "not later" than 30 days before the election was Tuesday, October 11, 2016. Mr. Isabel moved to Phoenix on October 5, 2016 in order to serve as a sworn officer with the Phoenix Police Department. He registered to vote in person at an MVD office on October 11th, the day after Columbus Day. [SER6 at ¶ 8.] His registration was timely under federal law.

Defendant Reagan now argues that the NVRA's "plain language" permits states to set registration deadlines 30 days before an election, even if weekends or holidays would have the effect of requiring voters to register more than 30 days in advance. [Reagan Br. at 13–15.] But this would permit states to set voter-registration deadlines on days when the NVRA's mandated voter registration avenues are closed. As the *ADP* court correctly held, states may not set *nominal* deadlines of 30 days before an election if the *effective* deadlines are "later than" 30 days:

> **[I]n effect, the deadline to register by postmarked mail was Saturday, October 8, 2016—31 days before the election. The deadline to register in-person at the MVD was Friday, October 7, 2016—32 days before the election**. The voter registration deadline therefore did not ensure that any applicant who registered to vote "not later" than 30 days before November 8, 2016 was eligible to vote in the general election.

*ADP*, 2016 WL 6523427, at *13 (emphasis added). The *ADP* court's ruling is bolstered by pre-NVRA practice, as the Voting Rights Act had already been

interpreted to require states "to keep open their registration rolls for presidential elections until 30 days preceding the election." *Oregon v. Mitchell*, 400 U.S. 112, 236 (1970). By setting the deadline on a day when at least two of the NVRA's mandated registration avenues were not open, Defendants violated federal law.

Defendant Reagan also contends (at 14) that even though registration by mail and in person was not possible 30 days before the November 2016 Election, the MVD's online registration system was still available. But the NVRA requires states to allow for registration via all four prescribed methods and does not permit substitution of an online alternative. Regardless, it was not possible for Mr. Isabel to use the online system, as the system requires a valid Arizona driver's license, which he did not possess on account of his recent arrival to the state.[3]

In sum, the *ADP* court correctly held that Defendants' policy of deeming registrations submitted on October 11, 2016 as untimely violated the NVRA, and that Mr. Isabel's October 11th registration was therefore timely under federal law. Defendant Reagan's belated arguments to the contrary should be rejected.

> **2.** **Arizona law established October 11, 2016 as the last day to submit a voter-registration application for the November 2016 Election.**

Defendant Reagan also argues that Mr. Isabel's October 11th registration was

---

[3]     *See* Arizona Secretary of State's Website (noting that online registration requires "an Arizona Driver License and/or an Arizona non-operating I.D. card issued by the Motor Vehicle Division").

untimely under state law. [Reagan Br. at 9–13.] She presented the same arguments to the *ADP* court, which rejected them. *See ADP*, 2016 WL 6523427, at *15 ("[I]t is apparent that the Secretary erred in her application of Ariz. Rev. Stat. § 16-120; a strict construction of its time limit is incompatible with the statutory scheme."); *see generally id.* at *14–*16 (concluding that "the Committees prevail on the merits of their state law claim"). The *ADP* court's conclusion was correct.

All registrations submitted on October 11, 2016 were, as a matter of state law, considered to have been filed on October 10, 2016. As the district court below observed, "A.R.S. § 1-303 provides that whenever a deadline falls on a date that is considered a holiday under state law, acts taken on the following day must be deemed timely." [ER037 n.3.] Thus, even if the October 10, 2016 Columbus Day deadline were otherwise valid, Plaintiff has adequately alleged that, as a matter of state law, his registration the following day was timely.

## II. DEFENDANTS VIOLATED PLAINTIFF'S RIGHT TO VOTE, AND THAT VIOLATION IS ACTIONABLE UNDER THE CIVIL RIGHTS STATUTES.

As set forth in Plaintiff's Opening Brief (at 12–13), the Supreme Court "has consistently held" that "the right of qualified voters to cast their ballots and have them counted at Congressional elections . . . is a right secured by the Constitution." *United States v. Classic*, 313 U.S. 299, 315 (1941). This right includes the right to vote in elections for both the House and Senate. *See, e.g., Harper v. Virginia State*

*Bd. Of Elections*, 383 U.S. 663, 665 (1966) ("[T]he right to vote in federal elections is conferred by Art. I, s 2, of the Constitution . . . ."); *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 821 (1995) ("Following the adoption of the Seventeenth Amendment in 1913, this ideal was extended to elections for the Senate."). And it is "secured against the action of individuals as well as of states." *Classic*, 313 U.S. at 315.

Section 1983, in turn, provides a private right of action to "any citizen [subjected] to the deprivation of any rights . . . secured by the Constitution and laws." 42 U.S.C. § 1983. And a long line of Supreme Court cases confirms that, as at common law, § 1983 contemplates the right to seek damages for voting-rights violations. *See Wiley*, *Swafford*, *Bivens*, *Carey*, *Stachura*, cited *infra*.

Mr. Isabel was a qualified voter who was deprived of his constitutional right to vote. That deprivation is actionable under the plain language of § 1983 and prevailing Supreme Court precedent.

Defendants do not dispute that the right to vote is protected by the Constitution or that a properly registered voter is deprived of that right when his or her vote is discarded. Nor do they dispute that plaintiffs are generally entitled to seek relief under § 1983—including monetary damages—for constitutional violations. But they do claim that a plaintiff deprived of the right to vote may not seek such relief. That claim is wholly unsupported.

### A. The *Classic* line of cases makes clear that the right to vote is actionable under the Civil Rights Statutes.

In *Classic*, Louisiana election officials were indicted for, *inter alia*, not counting all valid votes in a primary election for Congress. The statutes at issue—criminal analogues to § 1983[4]—made liable anyone who conspires to "injure a citizen in the exercise of any right or privilege secured to him by the Constitution or laws of the United States," or who, "acting under color of any law . . . willfully subjects, or causes to be subjected, any inhabitant of any State to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution and laws of the United States." *Classic*, 313 U.S. at 309–10 (internal quotation marks omitted). The Supreme Court held that the constitutional "rights" under the statutes at issue included the right to vote. *Id.* at 315 ("Obviously included within the right to choose, secured by the Constitution, is the right of qualified voters within a state to cast their ballots and have them counted."). Indeed, as *Classic* recognized, that the right to vote was protected by the Constitution had long been established. *See*, *e.g.*, *Ex Parte Yarbrough*, 110 U.S. 651, 654 (1884) (upholding federal criminal convictions for conspiring to violate the right to vote as secured by the Constitution).

---

[4]    One statute was a precursor to what the Supreme Court dubbed § 1983's "criminal counterpart." *See, e.g.*, *Daniels v. Williams*, 474 U.S. 327, 329–30 (1986); *compare* *Classic*, 313 U.S. at 325–26, n.9 & n.10 *with* 18 U.S.C. § 242.

Defendants appear to argue that, as the district court concluded, *Classic* is irrelevant to this case because "*Classic* was a criminal case" and "[t]his is a civil case." [ER020]; *see also* County Br. at 24 n.6; Reagan Br. at 21. But that distinction has no bearing on the question whether the right to vote is "secured by the Constitution." The answer to that question was clear before *Classic*, and *Classic* re-affirmed that the answer is yes. Neither the district court nor Defendants offer any basis for concluding that the right to vote is secured by the Constitution for criminal purposes but not for civil purposes. Nor do they explain why deprivations of that right would give rise to liability under a criminal statute but not under a civil statute that employs identical language.

### B. A voter need not allege discrimination or criminal misconduct to seek damages under § 1983.

The Supreme Court has consistently held that voters may seek damages for voting-rights violations. *See*, *e.g.*, *Wiley v. Sinkler*, 179 U.S. 58, 62 (1900) (holding that plaintiff could sue for money damages in federal court because the right to vote "is not derived merely from the Constitution and laws of the state . . . but has its foundation in the Constitution of the United States"); *Swafford v. Templeton*, 185 U.S. 487, 488 (1902) (relying on *Wiley* to reinstate an action seeking "to recover damages for an asserted wrongful refusal by the defendants to permit the plaintiff to vote").

The Supreme Court confirmed the applicability of a § 1983 suit for damages to this line of cases in 1971, 1978, and 1986. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 395–96 (1971) (citing, among other cases, *Wiley* and *Swafford*); *Carey v. Piphus*, 435 U.S. 247, 264 n.22 (1978) ("[T]his Court has held that actions for damages may be maintained for wrongful deprivations of the right to vote."); *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 311 n.14 (1986) ("In *Nixon*, the Court held that a plaintiff who was illegally prevented from voting in a state primary election suffered compensable injury."). As the Court observed in *Strachura*:

> *Nixon* followed a long line of cases, going back to Lord Holt's decision in *Ashby v. White*, . . . authorizing substantial money damages as compensation for persons deprived of their right to vote in particular elections. . . . *In the eyes of the law the right to vote is so valuable that damages are presumed from the wrongful deprivation of it*.

*Id.* (internal citations and quotation and alteration marks omitted) (emphasis added).

Defendants argue that the cases authorizing damages cited above typically involved "egregious and intentional violations of rights not present here." [Reagan Br. at 20; *see also* County Br. at 24 n.6 (stating that reliance on *Classic* is "misplaced").] But the Supreme Court in those cases held that the plaintiffs could seek damages because their right to vote was protected by the Constitution, not because the alleged violations rose to a sufficient level of willfulness. *See*, *e.g.*, *Ex Parte Yarbrough*, 110 U.S. at 663 (holding that the right to vote was secured by

Article I, Section 2 of the Constitution); *Classic, 313 U.S. at 323* (same). *Classic*, for example, was decided as a matter of "statutory construction" and "d[id] not pass upon . . . the sufficiency . . . of the indictments." *Id.* at 309. Plaintiff is aware of no court (other than the district court below) that has required or suggested that voting-rights violations must be criminal or "egregious" to be actionable.

In any event, Plaintiff sufficiently alleged that Defendants' conduct *was* willful. Defendants purported to set an unlawful registration cutoff in direct violation of state and federal law. After the *ADP* court's decision, on the eve of the November 2016 Election, that October 11th registrations were timely, Defendants willfully disregarded the court's ruling and refused to count Mr. Isabel's provisional ballot. [*See* SER10–11 at ¶¶ 30–33, 38.] To be clear, these allegations—while necessary for Mr. Isabel's claim for punitive damages—are irrelevant to the sufficiency of his claim for compensatory damages under § 1983.

## C. Defendants' remaining arguments should also be rejected.

Defendants rely on two cases cited by the district court [ER021–022]—*Powell v. Power*, 436 F.2d 84 (2d Cir. 1970), and *Hutchinson v. Miller*, 797 F.2d 1279 (4th Cir. 1986)—for the proposition that Plaintiff was not entitled to an error-free election. [Reagan Br. at 22, 27–28; County Br. at 27–28.] But Plaintiff has never asserted such a right. [*See* Pl. Br. at 16 ("Mr. Isabel is not claiming that he has a Constitutional right to an error-free election.").] *Powell* and *Hutchinson* are

completely inapposite here, as in neither case did the plaintiff claim to have been deprived of the right to vote, and Defendants do not even attempt to address the detailed analysis presented in Plaintiff's Opening Brief distinguishing these cases from the claims at issue here.

Finally, the County Defendants object that Plaintiff's suit is brought "[i]n the name of federal common law." [County Br. at 27.] This objection misapprehends the gravamen of Plaintiff's claim. As the district court correctly stated, "[a]t bottom, Isabel's theory is that the right to vote is a fundamental right protected by the Constitution." [ER019.] To be sure, a suit for damages was available at common law for voting-rights violations, and common-law damages rules "provide the appropriate starting point for the inquiry" under § 1983. *See Ashby v. White*, 1 Bro.P.C. 62, 1 Eng.Rep. 417 (H.L.1703), *rev'g* 2 Ld.Raym. 938, 92 Eng.Rep. 126 (K.B.1703); *Carey*, 435 U.S. at 257–58; *id.* at 264 n.22 ("The common-law rule of damages for wrongful deprivations of voting rights embodied in *Ashby v. White* would, of course, be quite relevant to the analogous question under § 1983"). But County Defendants are incorrect in arguing (at 28) that Mr. Isabel does not "rel[y] on a federal statutory scheme or constitutional provision." Mr. Isabel's constitutional claim is rooted in Article I, Section 2 of the Constitution and the Seventeenth Amendment, and his NVRA claim is based on the NVRA.

The Supreme Court re-affirmed in *Classic* that the right to vote is secured by the Constitution. And it affirmed—in *Bivens*, *Carey*, and again in *Stachura*—that voters deprived of that right may seek damages under § 1983. Nothing cited by the Defendants or the district court calls these holdings into question.

## III. DEFENDANTS VIOLATED PLAINTIFF'S VOTER-REGISTRATION RIGHTS UNDER THE NVRA, AND PLAINTIFF IS ENTITLED TO SEEK RELIEF UNDER § 1983.

The Supreme Court has long held that § 1983 applies not just "to some subset of laws" but, rather, "broadly encompasses" violations of federal statutory rights. *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980). Where a federal statute creates an individual right, there is "a rebuttable presumption that the right is enforceable under § 1983." *Blessing v. Freestone*, 520 U.S. at 341. To rebut the presumption, a defendant "must make the difficult showing that allowing § 1983 actions to go forward . . . would be inconsistent with Congress' carefully tailored scheme." *Id.* at 346 (internal quotation marks omitted). "The crucial consideration is what Congress intended" and, in particular, whether it "intended a statute's remedial scheme to be the exclusive avenue through which a plaintiff may assert the claims." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 252 (2009) (internal citation and alteration marks omitted). "Only an *exceptional* case—such as one involving an unusually comprehensive and exclusive statutory scheme—will lead us to conclude that a

given statute impliedly forecloses a § 1983 remedy." *City of Rancho Palos Verdes v. Abrams,* 544 U.S. 113, 131 (2005) (Stevens, J., concurring) (emphasis added).

Defendants do not dispute that the right to register to vote under the NVRA is a "right" secured by a federal "law" within the meaning of § 1983. It follows that a state actor who violates that right would ordinarily be liable under § 1983. The question here is whether the NVRA is "exceptional": that is, whether in enacting the NVRA, Congress intended to "withdraw" rather than "preserve" the § 1983 right of action. *See Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n,* 453 U.S. 1, 26–27 (1981) (Stevens, J., concurring). The answer is clear: Congress did not intend to withdraw § 1983 remedies for NVRA violations where it expressly preserved "all other rights and remedies provided by law." 52 U.S.C. § 20510(d).

## A. Congress expressly preserved "all other rights and remedies provided by law," which includes remedies under § 1983.

The NVRA's enforcement provision expressly states that its "private right of action" is *in addition to* all other rights and remedies provided by law." 52 U.S.C. § 20510(d) (emphasis added). As in *Maine,* this language "means what it says" and cannot be read to carve out those remedies provided by § 1983. The question before the Court is "whether Congress meant the judicial remedy expressly authorized by the statute to coexist with an alternative remedy available in a § 1983 action." *Fitzgerald,* 555 U.S. at 252 (quoting *Rancho Palos Verdes*) (alteration marks omitted). Congress answered that question in the NVRA without qualification: Yes.

The remedy expressly authorized therein is "in addition to"—*i.e.*, is intended to coexist with—"all other rights and remedies provided by law." 52 U.S.C. § 20510(d). *Cf.* County Br. at 12 (exhorting the Court to "look first . . . to the statutory language, particularly to the provisions made therein for enforcement and relief") (quoting *Sea Clammers*).

Congressional intent to preserve § 1983 relief is also clear in context. Courts must "presume Congress was aware" of its own statute, the Civil Rights Act of 1871, when it passed the NVRA in 1993, and that it was also aware that federal statutes were and are "routinely interpreted to allow for parallel and concurrent § 1983 claims." *Fitzgerald*, 555 U.S. at 258. In fact, at the time the NVRA was enacted, only twice had the Supreme Court found congressional intent to preclude § 1983 claims, with each case reaffirming the general rule in *Maine* "authorizing [§ 1983] suits to redress violations by state officials of rights created by federal statutes." *Sea Clammers*, 453 U.S. at 19; *Smith*, 468 U.S. at 1012 ("We do not lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy."). Had Congress intended to preclude reliance on § 1983 in the NVRA, it would surely have said so, knowing as it did that § 1983 would otherwise presumptively apply. In reality, Congress had no such intent.

If intent were unclear—in this case, it is not—evidence of intent could be "inferred from the statute's creation of a *comprehensive* enforcement scheme that is

*incompatible* with individual enforcement under § 1983." *Fitzgerald*, 555 U.S. at 252 (emphases added). The NVRA provides no such scheme. As the Court in *Fitzgerald* explained, the Supreme Court has inferred intent to preclude § 1983 claims only in view of the "unusually elaborate," "carefully tailored," and "restrictive" enforcement schemes of the statutes at issue in *Sea Clammers*, *Smith*, and *Rancho Palos Verdes*. 555 U.S. at 255. One need only read the enforcement sections of those statutes—thousands of words long with dozens of sub-provisions, procedures, and qualifications—to appreciate what the words "unusually elaborate," "carefully tailored," and "restrictive" actually mean. *See, e.g.*, 33 U.S.C. §§ 1319, 1365, and 1369 of the Federal Water Pollution Control Act (FWPCA), as cited in *Sea Clammers*; 20 U.S.C. § 1415 of the Education for All Handicapped Children Act (EHA), as cited in *Smith*; and 47 U.S.C. § 332(c)(7) of the Telecommunications Act (TCA), as cited in *Rancho Palos Verdes*. The Court in those cases found § 1983 claims to be precluded because, otherwise, plaintiffs would have been able to "circumvent" the "particular procedures" and "highly detailed and restrictive administrative and judicial remedies" that Congress set forth. *Fitzgerald*, 555 U.S. at 254. The NVRA's enforcement scheme has none of the hallmarks of those statutes from which exclusivity has been inferred.

## B.     Defendants' counterarguments all fail.

Defendant Reagan dismisses the NVRA's savings clause as "nothing but commonplace" but ignores its text. [Reagan Br. at 26.] And her claim that this argument "makes its first appearance on appeal" (*id.*) is inaccurate. [*See*, *e.g.*, Doc. 37 at 6–8; Doc. 38 at 8 n.4 (where Defendant Reagan herself noted Plaintiff's "heavy reliance" on the NVRA's savings clause); ER052–54 (where the district court analyzed Plaintiff's arguments regarding the savings clause).]

The County Defendants argue that Congress intended to preclude § 1983 relief. Specifically, they note (at 13–14) that the NVRA (1) "provides a private right of action"; (2) "contains its own enforcement provisions"; and (3) does not provide for money damages. In addition, they dismiss (at 15–18) the NVRA's savings clause as a "rabbit hole" not materially different from the clause at issue in *Sea Clammers*. In sum, the County Defendants contend that, because the NVRA provides for non-monetary remedies, this Court should infer Congress' intent to exclude damages under § 1983. For the reasons given below, the County Defendants' arguments should be rejected.[5]

---

[5]     Contrary to the County Defendants' assertion (at 11 n.5), the Fifth Circuit did not consider "whether the NVRA permits a plaintiff to sue under § 1983 to obtain monetary damages" in *ACORN v. Fowler*, 178 F.3d 350 (5th Cir. 1999). Notably, the plaintiff in that action did not seek compensatory damages. *Id*. at 355. The plaintiff—a nonprofit membership organization—could not have brought a claim for damages because an association cannot seek monetary damages on behalf of its members. *See AGCA v. MWDSC*, 159 F.3d 1178, 1181 (9th Cir. 1998).

1. **52 U.S.C. § 20510(d) is an "express" "textual indication" that the private right of action "is to complement, rather than supplant, § 1983."**

The County Defendants first point out that the NVRA provides for its own private right of action. It is true that in *Rancho Palos Verdes*, decided 12 years after the NVRA was enacted, the Court held this to be "ordinarily an indication" that Congress did not intend to leave open a more expansive remedy under § 1983. 544 U.S. at 121. But the Court emphasized that providing a private right of action is "merely indicative of . . . congressional intent"—an inference that "*can surely be overcome* by textual indication, express or implicit, that the remedy is to complement, rather than supplant, § 1983." *Id.* at 122 (emphasis added).

The statute at issue in *Rancho Palos Verdes* stands in fundamental contrast to this one. There, not only was the private right of action provided limited in scope, but the statute at issue (§ 332(c)(7) of the TCA) *had no savings clause* of its own— unlike neighboring subsections of that same Act. *Compare* § 332(c)(7) *with*, *e.g.*, 47 U.S.C. § 338(i)(7) ("The remedy provided by this subsection shall be in addition to any other lawful remedy . . . ."). This left the plaintiffs to glom on to a "No Implied Effect" provision in a distant, unrelated statutory note, that purported to leave other "laws" "unaffected." *See Rancho Palos Verdes*, 544 U.S. at 126.

In the NVRA, in contrast, Congress established a private right of action, § 20510(b), and, *in the same section*, made clear that it was created "in addition to

all other rights and remedies provided by law," § 20510(d) ("Relation to other laws"). This is the kind of "textual indication" that the Court contemplated in *Rancho Palos Verdes* but found wanting in that case—an express indication "that the remedy is to complement, rather than supplant, § 1983."

### 2. The NVRA does not provide a "comprehensive enforcement scheme that is incompatible with . . . § 1983."

The County Defendants next point out (at 14) that the NVRA "contains its own enforcement provisions." But the question is not whether Congress contemplated that the statute be enforced; it is whether Congress intended that the remedies provided be *exclusive*—and, in particular, whether "the comprehensive nature of the procedures and guarantees set out in the statute" warrant an inference of "congressional intent for exclusivity." *See Fitzgerald*, 555 U.S. at 254 (quotation and alteration marks omitted); *see also ASW v. Oregon*, 424 F.3d 970, 977 (9th Cir. 2005) (holding that where the statute "does not explicitly foreclose a § 1983 action . . . the State must demonstrate that Congress created a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983").

The enforcement provision of the NVRA hardly qualifies as a "comprehensive enforcement scheme." Section 20510 is less detailed than the provision at issue in *Fitzgerald* (20 U.S.C. § 1682), which the Supreme Court held was not sufficiently comprehensive a remedial scheme from which to infer exclusivity. *See Fitzgerald*, 555 U.S. at 258 ("In light of . . . the absence of a

comprehensive remedial scheme comparable to those at issue in *Sea Clammers*, *Smith*, and *Rancho Palos Verdes*, we conclude that Title IX was not meant to be an exclusive mechanism . . . or a substitute for § 1983 suits."); *see also ASW*, 424 F.3d at 978. Although the County Defendants repeatedly point (at 11, 14, 20) to the "procedures" outlined in the NVRA, they do not and cannot reasonably contend that those procedures are so "restrictive" as to be "incompatible" with § 1983. Nowhere do Defendants appear to argue that the NVRA offers the kind of "comprehensive," "carefully tailored" remedial scheme that would permit an inference of exclusivity.[6]

### 3. Congress never intended to bar § 1983 damages claims for voters deprived of their registration rights without notice.

Third, the County Defendants correctly observe (at 13–14) that the NVRA does not provide for monetary damages. *See* § 20510; County Br. at 15. But this does not imply an intent to preclude damages *elsewhere*.

Where—as here—a savings clause expressly preserves "all other rights and remedies," and in the absence of a "comprehensive remedial scheme," no implied conflict arises from the difference in relief available under the NVRA and § 1983. As the district court rightly asked, "Why did Congress put [the savings clause] in

---

[6]     In fact, Defendant Reagan conceded below that the NVRA "does [not] foreclose a remedy that was available under § 1983" and is "not in derogation to other causes of action," including "under § 1983." [*See* ER080.]

there if not to allow other lawsuits and remedies in addition to what's specified in

the actual NVRA statute?" The court continued:

> I guess what I'm still struggling with is, so a plaintiff can sue directly
> under the NVRA to get injunctive and declaratory relief. What else can
> a plaintiff do? Like what does the savings clause allow them to do
> beyond bringing a lawsuit directly under the statute for those two forms
> of relief? And if the [answer] is zero, the general ways we think about
> statutes and Congress's intent is, Congress doesn't enact language that
> has zero meaning and achieves nothing.

[ER081.] When pressed to identify what the savings clause might theoretically

preserve *other than* § 1983 claims, Defendants had no answer, *see id.*, and continue

to offer none. Simply put, § 1983 claims are the quintessential claims that Congress

intended to preserve.

Even ignoring the savings clause and the absence of a comprehensive scheme,

however, the fact that Congress provided certain remedies under the NVRA does

not, without more, evidence an intent to exclude other remedies available elsewhere.

First, that plaintiffs can seek relief under one statute when it is not available under

another is generally regarded as a feature of our legal system, not a problem—one

that the Supreme Court took for granted, for example, in a recent decision:

> It is easy to imagine circumstances under which parents might start
> down the IDEA road and then change course and file an action under
> the ADA or the Rehabilitation Act that seeks relief that the IDEA
> cannot provide. The parents might be advised by their attorney that the
> relief they were seeking under the IDEA is not available under that law
> but is available under another. Or the parents might change their minds
> about the relief that they want, give up on the relief that the IDEA can
> provide, and turn to another statute.

*Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 759 (2017) (Alito, J., concurring).

Second, that the NVRA does not expressly provide for damages does not distinguish it from other federal statutes that, likewise, did not expressly provide for damages but which the Supreme Court held nonetheless preserved damages claims under § 1983. *See, e.g.*, *Fitzgerald*, 555 U.S. at 247 (recognizing an implied private right of action under § 1983, including for damages, for Title IX violations, even though "Title IX's only express enforcement mechanism, 20 U.S.C. § 1682, is an administrative procedure resulting in the withdrawal of federal funding from noncompliant institutions").

Third, to adopt the County Defendants' view that the NVRA's private right of action implicitly bars § 1983 claims would force upon Congress an "all or nothing" approach to preserving such claims. The only way Congress could preserve § 1983 claims, other than by explicit reference, would be to: (1) expressly provide all relief under a statute that would otherwise be available under § 1983 (to avoid the appearance of a conflict between the two), or (2) provide no private right of action at all, and hope that courts read one into the statute. The courts cannot and do not impose such a requirement or limitation.

In sum, that the NVRA does not provide for damages in no way implies that damages are "incompatible" with § 1983 or that Congress intended to preclude § 1983 relief. *See generally POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102,

[115 (2014)](#) ("When two statutes complement each other, it would show disregard for the congressional design to hold that Congress nonetheless intended one federal statute to preclude the operation of the other.").

Indeed, barring § 1983 claims would contravene Congress's intent and undermine the NVRA's enforcement. Here, Defendants violated the NVRA and, as a result, Plaintiff was denied his right to register to vote in the period prescribed by federal law. In addition, because Defendants told Plaintiff that his registration was valid and invited him to participate in the November 2016 Election, *see* SER9 at ¶¶ 26–27, he was not aware of the violation until long after the election was over, when injunctive relief was no longer possible. Barring § 1983 claims would leave Plaintiff and others like him with no means of redress, and there is no indication anywhere that this was Congress's intent.

> **4. This case is not like *Sea Clammers*, and § 20510(d) is not comparable to the clause at issue in that case.**

The County Defendants' final assertion (at 18) is that the savings clause in *Sea Clammers* does not materially differ from that at issue here. Defendants, however, ignore critical differences in the text and structure of the statutes and the context in which they were passed.

First, the federal statute at issue in *Sea Clammers* was passed years *before Maine—i.e.*, before Congress was indisputably aware that § 1983 would, in the ordinary course, presumptively apply to violations of federal statutes. When the

NVRA was passed in 1993, however, *Maine* had been good law for 13 years, and only two exceptions to it (for elaborate and complex administrative and regulatory schemes) had been recognized. In addition, as explained above, the Supreme Court had reaffirmed in three separate § 1983 cases—in 1971, 1978, and 1986—that the damages rule of *Ashby* presumptively applies to § 1983 cases for voting-rights violations. *See supra* Section II(B) (discussing *Bivens*, *Carey*, and *Stachura*).

Congress was surely aware of § 1983's presumptive application to voting-rights claims, especially because voting rights go to the heart of the civil rights that § 1983 was enacted to protect. *See Lorillard v. Pons*, 434 U.S. 575, 580 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute."); *see generally, United States v. Fausto*, 484 U.S. 439, 461, 463 n.9 (1988) (Stevens, J., dissenting) (stating, with respect to the Court's "rule against lightly implying an intent to repeal a previously existing statutory remedy": "We can presume with certainty that Congress is aware of this longstanding presumption."). Against that backdrop, § 20510(d) cannot be dismissed as just another "so-called 'savings clause.'" [*Cf.* County Br. at 15.] On the contrary, the broad language in § 20510(d)—preserving "all other rights and remedies"—is dispositive here.

Second, *Sea Clammers* and its progeny do not stand for the proposition that savings clauses cannot preserve § 1983 claims. The acts at issue in *Sea Clammers*, *Smith*, and *Rancho Palos Verdes* set forth lengthy, elaborate, and, most importantly,

comprehensive administrative and regulatory frameworks. *See, e.g., Rancho Palos Verdes,* 544 U.S. at 128 ("This procedural and judicial review scheme resembles that governing many federal agency decisions.") (Breyer, J., concurring). It was in that context that the Court construed the "savings" or "no effect" clauses in those cases— clauses generally applicable to the acts as a whole, located far from the statutory-remedies language at issue and without any discernible relation to it. Those clauses had no connection to § 1983, and the Court declined to infer one. The NVRA could not be more different. For one, it is a statute enacted to protect voting rights, not, *e.g.*, regulate effluent standards. More importantly, the NVRA's savings clause is directly on point and clearly implicates the "private cause of action" language *that immediately precedes it*. If § 20510(d) does not preserve § 1983 claims then, as the district court asked, "[W]hat else . . . does it allow [a plaintiff] to do?" [ER081.]

Finally, the congressional reports cited by Defendants nowhere indicate an intent to preclude § 1983 relief. The reports state that "*this section* [§ 20510 of the NVRA] does not authorize the award of monetary damages." That is accurate: the NVRA does not provide for damages. The reports, however, in no way indicate an intent to preclude damages actions under § 1983. Regardless, this historical and legislative context is irrelevant where the actual language of § 20510(d) leaves no room for ambiguity. *See* A. Scalia & B. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS, at 369 (2012) (discussing "[t]he false notion that

committee reports and floor speeches are worthwhile aids in statutory construction"); [*cf.* ER054 at n.7 (citing *Epic Sys. Corp. v. Lewis*, 138 S.Ct. 1612, 1631 (2018))].

Again, § 20510(d) states: "The rights and remedies established by this section are *in addition to* all other rights and remedies provided by law." (emphasis added.) As dozens of cases have held, where a savings clause provides that remedies are "in addition to" other remedies, it evidences an intent to supplement, not to supplant. *See*, *e.g.*, *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 81 (2011) (noting that the phase "in addition to" implies "not in derogation of"); *Herman & MacLean v Huddleston*, 459 U.S. 375, 383 (1983) (describing the "in addition to" language in the 1933 Act as "unequivocal[]");[7] *Landgraf v. USI Film Prods.*, 511 U.S. 244, 253 (1994) (holding that the new compensatory damages provision of the Civil Rights Act of 1991 "*does not replace* or duplicate, the backpay remedy allowed under prior law" because the statute provides that the new remedy is "in addition to" other

---

[7] The County Defendants argue (at 16–17) that the Supreme Court's interpretation in *Herman* of a savings clause similar to the NVRA's should be disregarded because it involved a different area of law, but the prior-construction canon has never been interpreted so narrowly. For example, in *I.C.C. v. Bhd. of Locomotive Engineers*, the Supreme Court based its interpretation of the limitation period in the Hobbs Act on its prior construction of similar language found in the Administrative Procedure Act. 482 U.S. 270, 285 (1987) ("We can find no basis for distinguishing the language of § 10327(i) [Hobbs Act] from that of § 704 [APA]."). In fact, the County Defendants admit (at 17) that this Court relied on a prior construction of a "different statutory scheme in another area of law" in *Miranda B. v. Kitzhaber*, 328 F.3d 1181 (9th Cir. 2003).

remedies provided); *Martin ex rel. Heckman v. Midwest Exp. Holdings, Inc.*, 555 F.3d 806, 808 (9th Cir. 2009) (concluding that the Federal Aviation Act (FAA) does not preclude state law remedies because the FAA's "Relationship to other laws" provision provides that "[a] remedy under this part is *in addition to* any other remedies provided by law.") (emphasis added); *Holder v. Holder*, 305 F.3d 854, 860 (9th Cir. 2002) (same re: International Child Abduction Remedies Act).

### C. The NVRA and constitutional claims are qualitatively different.

Defendant Reagan concedes that the NVRA does not preclude Plaintiff's constitutional claims. [*See*, *e.g.*, Reagan Br. at 37 ("[T]he Secretary agrees with the proposition that were there viable monetary claims made based on the U.S. Constitution, the NVRA would not foreclose them.").] The County Defendants do not address the point. As this matter does not appear to be contested, Plaintiff relies on his Opening Brief as to this point. *See* Section II(B) of Pl.'s Op. Br. ("The NVRA Does Not Preclude Plaintiff's Constitutional § 1983 Claims").

### D. Summary of NVRA preclusion arguments

The NVRA expressly preserves "all other rights and remedies provided by law," including under § 1983. Even without § 20510(d), there is a rebuttable presumption that § 1983 applies. Although the presumption can be rebutted where the statute provides a "comprehensive remedial scheme" that is "incompatible" with § 1983, the NVRA does not do this. And the fact that the NVRA and § 1983

potentially provide for different relief against different parties in no way demonstrates that Congress enacted the former with the intent to preclude the latter. Congress never intended to insulate state actors from liability for non-transparent violations of the NVRA, and it never intended to leave injured plaintiffs, like Mr. Isabel, without any means of redress.

## IV.   PLAINTIFF SUFFICIENTLY ALLEGED CAUSATION.

### A.   Plaintiff sufficiently alleged that the County Defendants caused him harm.

The County Defendants contend (at 28) that they "did not cause [Plaintiff's] ineligibility" because Plaintiff could have registered earlier—including on Columbus Day in Maricopa County—but did not do so. But the question is not whether earlier registration was *possible*; the question is whether it was *required*. [*See* ER037 n.3 ("It is . . . unclear why Maricopa County's non-recognition of Columbus Day has any bearing on the issues here.").] If the Plaintiff's October 11th registration was timely, as Plaintiff contends, *see* Section I(C) *supra*, Defendants harmed Plaintiff when they disregarded his ballot on account of his October 11th registration.

Regardless, A.R.S. § 11-413—the statute that authorized counties to give their employees a day off on Black Friday, instead of Columbus Day—does not permit different counties to impose different voter-registration deadlines. First, the scope of A.R.S. § 11-413 was expressly circumscribed by the legislature. Although the statute

provides a carve-out of Arizona's holiday statute, it does so only "for the purposes of opening county offices for the transaction of business." Arizona courts have held that when a statute expressly limits its application in this manner, it should not be applied more broadly. *See State v. Oakley*, 180 Ariz. 34, 36 (App. 1994). Arizona's holiday statute, in contrast, applies generally. *See* A.R.S. § 1-303 (stating that the statute applies to "*anything* of a secular nature, other than a work of necessity or charity") (emphasis added). Thus, even though Maricopa County opted to remain open for business on Columbus Day, Columbus Day remained a statewide holiday for all other purposes—including for purposes of determining the lawful voter-registration deadline.

In addition, the County Defendants' interpretation of the statute is inconsistent with their prior application of it. When the voter-registration deadline fell on Columbus Day in 2012, the County continued to treat Columbus Day as a holiday even though it remained open for business—treating all voter-registration applications received the day after Columbus Day as if they were submitted on Columbus Day. [*See* SER7 at ¶ 14.]

Finally, if the Court were to accept the County Defendants' position, Plaintiff would have an equal-protection claim. *See Bush v. Gore*, 531 U.S. 98, 104–05 (2000) (finding that a lack of uniform, statewide election rules would constitute a violation of the Equal Protection Clause).

**B.    Defendants' reliance on *Rosario* and *Barilla* is misplaced.**

Defendants continue to rely on *Rosario* and *Barilla*, but those cases have no relevance here. [Reagan Br. at 16–19 (citing, *inter alia*, *Rosario v. Rockefeller*, 410 U.S. 752 (1973) and *Barilla v. Ervin*, 886 F.2d 1514 (9th Cir. 1989)); County Br. at 30–32 (same).] Unlike Mr. Isabel, the plaintiffs in those cases submitted *untimely* voter registrations and proceeded to challenge the validity of registration deadlines *simpliciter*. *See Rosario*, 410 U.S. at 755 (noting that plaintiffs submitted their registration forms three months after the registration deadline); *Barilla*, 886 F.2d at 1517 (noting that all plaintiffs registered or attempted to register "after the registration cutoff"). In addition, the plaintiffs contended that the deadlines unconstitutionally *burdened* their right to vote. *Rosario*, 410 U.S. at 760; *Barilla*, 886 F.2d at 1522, 1524. As the district court noted, Defendants' citations to those cases "overlook Isabel's invocation of A.R.S. § 1-303" and his claim that his registration was timely under state law. [ER037.] Here, Plaintiff does not challenge the constitutionality of voter-registration deadlines *simpliciter*. Rather, Plaintiff alleges that he complied with the lawful deadline but was denied the right to vote anyway. *Rosario* and *Barilla* are inapposite.

## CONCLUSION

For the foregoing reasons, Plaintiff-Appellant David Isabel respectfully requests that this Court vacate the District Court's judgment of dismissal and remand for trial on the merits.

Dated:    August 13, 2020          Respectfully submitted,

*s/ Spencer G. Scharff*
Spencer G. Scharff
SCHARFF PLLC

Nathan Fidel
MILLER, PITT, FELDMAN & MCANALLY P.C.

Scott Caplan
THE LAW OFFICE OF SCOTT CAPLAN, P.C.

*Counsel for Plaintiff-Appellant*
*David Isabel*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel for Plaintiff-Appellant, certifies that this brief complies with the longer length limits permitted by Ninth Circuit Rule 32-2(b) because Plaintiff-Appellant is filing a single brief in response to multiple Answering briefs. The brief contains 8,142 words, excluding the portions exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

Dated:  August 13, 2020          Scharff PLLC

                                            *s/ Spencer G. Scharff*
                                            Spencer G. Scharff

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on August 13, 2020 for filing and transmittal of a Notice of Electronic Filing:

Dated:  August 13, 2020                    Scharff PLLC

                                           *s/ Spencer G. Scharff*
                                           Spencer G. Scharff